Kenneth O'BERT, as Administrator of the ESTATE OF Richard O'BERT, Plaintiff–Appellee–Cross–Appellant,

v.

Robert J. VARGO, Sergeant, Vermont State Police, Defendant–Appellant–Cross–Appellee,

John G. Fagerholm, III, Sergeant, Vermont State Police, Defendant–Cross–Appellee.

No. 02–7805(L), 02–7905.

United States Court of Appeals, Second Circuit.

Argued: Feb. 21, 2003.

Decided: June 2, 2003.

Chris S. Dodig, Bennington, Vermont (James R. Loughman, Bennington, Vermont, on the brief), for Plaintiff–Appellee–Cross–Appellant.

Cathy Nelligan Norman, Assistant Attorney General, Montpelier, Vermont (William H. Sorrell, Attorney General of the State of Vermont, Montpelier, Vermont, on the brief), for Defendant–Appellant–Cross–Appellee and Defendant–Cross–Appellee.

Before: OAKES, KEARSE, and B.D. PARKER, Circuit Judges.

KEARSE, Circuit Judge.

Defendant Robert J. Vargo, a Sergeant in the Vermont State ("State") Police, appeals from an order of the United States District Court for the District of Vermont, J. Garvan Murtha, then-*Chief Judge,* denying his motion to alter or amend an order that denied his motion pursuant to Fed. R.Civ.P. 56 for summary judgment dismissing, on the basis of qualified immunity, the claim of plaintiff Kenneth O'Bert ("plaintiff"), brought under 42 U.S.C. § 1983 as administrator of the estate of Richard O'Bert ("O'Bert"), for use of excessive force in the shooting death of O'Bert. The district court denied Vargo's motion for summary judgment on that claim, ruling that there were genuine issues of material fact to be tried as to the circumstances confronting Vargo after he entered O'Bert's trailer home; and it denied Vargo's motion to alter that denial, ruling that on plaintiff's version of the facts it was not objectively reasonable to subject O'Bert to deadly force. On appeal, Vargo argues that he was entitled to judgment as a matter of law on the basis of the undisputed facts and any disputed facts construed favorably to plaintiff. Plaintiff cross-appeals from the summary dismissal, on the ground of qualified immunity, of so much of the complaint as asserted claims under § 1983 against Vargo and defendant John G. Fagerholm, III, likewise a State Police Sergeant, for unlawful entry into O'Bert's home. The court entered a partial final judgment pursuant to Fed. R.Civ.P. 54(b) as to the unlawful entry claims, stating this Court would thereby have the entire case before it since Vargo

could take an immediate appeal with respect to the excessive force claim. For the reasons that follow, we affirm the order of the district court that is the subject of the appeal by Vargo; we dismiss the cross-appeal because the partial final judgment did not comply with the requirements of Rule 54(b) and was improvidently entered.

## I. BACKGROUND

This action has its origin in a complaint received by the State Police at approximately 9:23 p.m. on April 8, 2000, that a man—O'Bert—was beating a woman in the parking lot of a trailer park. The officers who responded (collectively the "officers") were Vargo, Fagerholm, and State Troopers Ruth Gemperlein and John–Paul Schmidt. Fagerholm was the first officer on the scene, and he soon determined that O'Bert had been physically abusive toward Cynthia Miller, who lived with O'Bert and described herself as his wife.

Fagerholm interviewed Miller outside the trailer, with O'Bert remaining inside except for a few minutes when he stepped out—in a very restrained, controlled, and nonthreatening manner, according to Fagerholm—to speak with Miller and Fagerholm. Fagerholm, as a result of his conversation with Miller, decided that O'Bert should be arrested on a charge of domestic assault, and he so informed the other officers when they arrived.

Most of the details as to the events that led the officers to enter the trailer, while pertinent to the claims of unlawful entry, are not material to the claim against Vargo for use of deadly force. We recount here only what is pertinent to Vargo's appeal. Further, we describe the events as plaintiff contends they occurred, given Vargo's assertion that he is entitled to take the present appeal from an interlocutory order on the premise that he accepts plaintiff's version of the facts.

### A. *The Shooting of O'Bert—Plaintiff's Version*

When the officers decided to arrest O'Bert, Gemperlein urged him to come out of the trailer. O'Bert refused; and when the officers threatened to enter the trailer to arrest him, O'Bert yelled, "I will blow your fucking heads off." Miller, who had been asked whether O'Bert had any weapons in the trailer, had told the officers that he had only a rifle or hunting guns.

The officers debated whether to call for a SWAT or tactical support team. While they were debating, Gemperlein, looking through a window of the trailer, saw O'Bert standing in the middle of the living room with nothing in his hands but a cigarette. Gemperlein informed Vargo and Fagerholm that she could see O'Bert and that he did not have a weapon in his hands. The officers decided to enter the trailer immediately, without summoning other forces, because O'Bert was unarmed; they would not have entered had they believed he was armed.

Gemperlein continuously watched O'Bert through the window from the time she first observed him without a weapon until just before Fagerholm kicked in the front door and the officers entered the trailer. The trailer was brightly lit, and Gemperlein's observation was that O'Bert remained unarmed standing in the center of the room. At the moment the officers entered the trailer they observed O'Bert without a gun in his hands, and they never lost sight of him. After the officers entered, O'Bert was never out of Vargo's sight at all; or if he was ever out of sight after Gemperlein first observed that he was unarmed, the interval was not long enough for him to access a weapon.

After the officers entered and followed O'Bert down the hallway of the trailer, O'Bert stood with his left side nearest to the officers. The officers repeatedly ordered O'Bert to show them his right hand. Although they could not see O'Bert's right hand, his right side was not entirely out of sight. By reason of the earlier conversations with Miller, the officers knew or had reason to know that O'Bert only had a rifle or long gun for hunting, not a handgun that would have been concealed as he stood there. Accordingly, Fagerholm walked to within a few feet of O'Bert and holstered his gun. He planned to tackle O'Bert and subdue him. Fagerholm made a sudden movement forward in an attempt to grab O'Bert, and O'Bert turned in response to Fagerholm's lunge. When O'Bert turned, Vargo shot him through the chest. O'Bert died minutes later. He was unarmed.

### B. *The Denial of Summary Judgment—Vargo's Version of the Events*

Plaintiff, O'Bert's brother and the administrator of his estate, commenced the present action under § 1983 against Vargo and Fagerholm ("defendants"), as well as others who are no longer parties in the case. The complaint asserted claims against Vargo and Fagerholm for unlawful entry and a claim against Vargo for use of excessive force. Following a period of discovery, which included depositions of all four officers, defendants moved for summary judgment dismissing the claims against them on the ground that they were entitled to qualified immunity. The district court granted defendants' motion with respect to the claims for unlawful entry for reasons adverted to in Part III below. Vargo's motion for summary judgment with respect to the excessive force claim was denied for the reasons that follow.

In support of his motion for summary judgment on the ground that he was entitled to qualified immunity for his use of deadly force, Vargo presented the following version of the events. When Gemperlein reported to Vargo and Fagerholm that O'Bert did not have a weapon in his hands, the officers decided to enter the trailer immediately. After they kicked the door in and entered, O'Bert disappeared from view. The trailer was dimly lit, and O'Bert was out of Fagerholm's sight for approximately 10–15 seconds and was out of Vargo's sight for about one minute. The officers feared that O'Bert would grab a gun that he had hidden in a handy spot and shoot at them.

When O'Bert reappeared after being out of the officers' sight for some 10–60 seconds, his left side was facing the officers and his right hand and right side were entirely hidden behind his body. The officers repeatedly ordered O'Bert to show them his right hand, which he refused to do. Even though Gemperlein had seen that O'Bert did not have a weapon in his hand immediately before the officers entered, the officers could not be sure whether or not he was armed because he had been out of their sight for up to a minute, and upon his reappearance he was intentionally concealing his right hand. This led the officers to believe that O'Bert was concealing a weapon; he had had ample time to access a gun between the time he disappeared down the hallway after the officers entered the trailer and the time when he reappeared.

As the officers made their way down the hallway toward O'Bert, Fagerholm holstered his weapon in the hopes that he could apprehend O'Bert by lunging at him. He took a little step forward to get within several feet of O'Bert; but Fagerholm did not try to grab O'Bert and made no sudden movement. Shortly after Fagerholm

holstered his gun, O'Bert spun around "very quickly with his right hand in a cocked forty-five-degree angle, as though he was going to shoot the officers" (Vargo's Statement of Undisputed Facts ¶ 90), coming around "so fast that Sergeant Vargo 'could not see [O'Bert's] right hand"' (*id.* ¶ 92 (quoting his own deposition testimony)). Fearful for his life and the lives of the other officers at that point, Vargo shot O'Bert, aiming for his "center of mass." (*Id.* ¶ 95.)

In an Opinion and Order dated April 25, 2002 ("Summary Judgment Opinion"), the district court denied Vargo's motion for summary judgment, finding that there were genuine issues of fact to be tried as to the objective reasonableness of Vargo's use of deadly force. For example, the court stated that, with respect to the period after the officers entered the trailer, there was a dispute as to whether O'Bert was out of Vargo's sight "at all," and if so, for how long:

> [w]ithout discrediting Sergeant Vargo's testimony or resolving the issue in Plaintiff's favor, the Court finds the testimony of Fagerholm and Schmidt to create a genuine dispute as to how long, *if at all,* O'Bert remained out of Vargo's sight after they entered the trailer.

Summary Judgment Opinion at 15 (emphasis added). Further, viewing the record in the light most favorable to plaintiff as the party opposing summary judgment, the court noted that, although prior to their entry O'Bert had not been continuously visible from the outside and could have hidden a weapon in the trailer, *id.* at 35, "at the moment the officers entered the trailer they observed O'Bert without a gun in his hands," *id.* at 34. The court also noted that there were disputes as to whether the trailer was well-lit and as to whether O'Bert made a quick movement before Fagerholm lunged at him. The

court found these disputes material because they affect the assessment "as to whether Vargo was reasonable in believing—at the moment he fired his weapon—that O'Bert posed an immediate threat to the officers." *Id.* at 38–39.

## C. *The Refusal To Amend the Denial of Summary Judgment*

Following the denial of summary judgment on the excessive force claim, Vargo moved pursuant to Fed.R.Civ.P. 59(e) for an order altering that decision, arguing that he was entitled to summary judgment even on plaintiff's version of the facts. In a Ruling on Defendant Vargo's Motion To Alter or Amend Judgment, dated June 5, 2002 ("Rule 59(e) Order"), the district court denied the motion because, on plaintiff's version of the facts, "a reasonable officer in Vargo's position would not have perceived O'Bert as an immediate threat so as to necessitate the use of deadly force." Rule 59(e) Order at 3. The court stated that

> *[b]ecause Vargo understood as he entered the trailer that O'Bert was not holding a hunting rifle or other weapon in his hands, and because Vargo saw O'Bert from the time he entered the trailer, it is reasonable to infer that O'Bert could not have picked up or otherwise handled a weapon without Vargo seeing him do so.* As such, and in light of other factors, Vargo lacked a reasonable basis for believing O'Bert was carrying a firearm or other weapon, even though O'Bert—cornered and perhaps surprised by four armed police officers in his own trailer home—failed to show his right hand upon the officers' request. Absent a reasonable basis for believing his life or safety or the lives or safety of the other officers was threatened, Vargo had no reason to employ deadly force against O'Bert.

*Id.* at 3–4 (footnote omitted) (emphasis added). The court noted as well that the fact "that Sergeant Fagerholm holstered his weapon and inched within a few feet of O'Bert before attempting to physically tackle him is also suggestive that O'Bert was not armed. Such factors sufficiently undercut Vargo's contention that he was reasonable in believing the circumstances warranted using deadly force against O'Bert." *Id.* at 3 n. 1.

Vargo has appealed the denial of his Rule 59(e) motion.

## II.  VARGO'S APPEAL

On appeal, Vargo contends that he is entitled to qualified immunity as a matter of law on the ground that, even on plaintiff's version of the events, which Vargo states he adopts for these purposes, it was objectively reasonable for him to use deadly force against O'Bert in the belief that O'Bert posed an immediate threat of death or serious injury to Vargo and/or the other officers. We disagree, for as the district court concluded, under plaintiff's version of the events, with all permissible inferences drawn in plaintiff's favor, Vargo's use of deadly force was not objectively reasonable.

## A.  *Excessive Force and Qualified Immunity*

■■■ A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him is not prohibited by federal law, *see, e.g., County of Sacramento v. Lewis,* 523 U.S. 833, 842 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct, *see, e.g., Harlow v.*

*Fitzgerald,* 457 U.S. 800, 817–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); or (3) if the defendant's action was "objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal quotation marks omitted); *see Harlow v. Fitzgerald,* 457 U.S. at 819, 102 S.Ct. 2727. In a case involving the use of deadly force, only the objective reasonableness branch of this test presents any possibility for a qualified immunity defense. *See, e.g., Salim v. Proulx,* 93 F.3d 86, 91 (2d Cir.1996).

■■■ Under the Fourth Amendment, which governs the use of force in connection with an arrest, law enforcement officers may use only such force as is objectively reasonable under the circumstances. *See, e.g., Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865. It is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others. *See, e.g., Tennessee v. Garner,* 471 U.S. 1, 3, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985); *see also Illinois v. Gates,* 462 U.S. 213, 230–32, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (existence of probable cause is to be determined on the basis of the totality of the circumstances).

■■■ Where officers attempting to make an arrest used deadly force, the objective reasonableness inquiry, for pur-

poses of either Fourth Amendment liability or qualified immunity, "depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force," *Salim v. Proulx,* 93 F.3d at 92 (qualified immunity); *see Graham v. Connor,* 490 U.S. at 396, 109 S.Ct. 1865 ("With respect to a claim of excessive force" during arrest, in violation of the Fourth Amendment, the standard is the "reasonableness [of the particular force used] at the moment[.]"); *see also Scott v. Henrich,* 39 F.3d 912, 914 (9th Cir.1994) ("[i]n Fourth Amendment unreasonable force cases, unlike in other cases, the qualified immunity inquiry is the same as the inquiry made on the merits" (internal quotation marks omitted)), *cert. denied,* 515 U.S. 1159, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995). The objective reasonableness test will not be met "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded," *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), in that moment that his use of deadly force was necessary.

B. *Summary Judgment and Appealability*

■ In ruling on a motion for summary judgment and assessing whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam) (inferences to be drawn from the underlying facts revealed in materials such as affidavits, exhibits, and depositions, must be viewed in the light most favorable to the party opposing the motion). Summary judgment should not be granted on the basis of a qualified immunity defense premised on an assertion of objective reasonableness unless the defendant "show[s] that no reasonable jury, viewing the evidence in the light most favorable to the Plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." *Ford v. Moore,* 237 F.3d 156, 162 (2d Cir.2001); *see also Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999); *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

■ Further, given the difficult problem posed by a suit for the use of deadly force, in which "the witness most likely to contradict [the police officer's] story—the person shot dead—is unable to testify[,] . . . . the court may not simply accept what may be a self-serving account by the police officer." *Scott v. Henrich,* 39 F.3d at 915. Rather, the court must also consider "circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." *Id.; see, e.g., Maravilla v. United States,* 60 F.3d 1230, 1233–34 (7th Cir.1995) (where "the witness most likely to contradict the officers' testimony is dead," the court should "examine all the evidence to determine whether the officers' story is consistent with other known facts"); *Plakas v. Drinski,* 19 F.3d 1143, 1147 (7th Cir.) ("in deadly force cases[,] . . . where the officer defendant is the only witness left alive to testify[,] . . . . a court must undertake a fairly critical assessment of," *inter alia,* "the officer's original reports or statements . . . to decide whether the officer's testimony could reasonably be rejected at a trial"), *cert. denied,* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 34 (1994).

Ordinarily, the denial of a motion for summary judgment is not immediately appealable because such a decision is not a final judgment. *See* 28 U.S.C. § 1291. Under the collateral order doctrine, however, the denial of a qualified-immunity-based motion for summary judgment is immediately appealable to the extent that the district court has denied the motion as a matter of law, although not to the extent that the defense turns solely on the resolution of questions of fact. *See, e.g., Behrens v. Pelletier,* 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Johnson v. Jones,* 515 U.S. 304, 313–318, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *In re State Police Litigation,* 88 F.3d 111, 124 (2d Cir.1996). We have held that where the district court has denied a qualified-immunity-based motion for summary judgment on the ground that there are triable issues as to which party's version of the facts is to be accepted, a defendant may pursue an immediate appeal if he adopts the plaintiff's version of the facts, contending that the facts asserted by the plaintiff "entitle [the defendant] to the defense of qualified immunity as a matter of law." *Salim v. Proulx,* 93 F.3d at 91.

### C. *The Merits of Vargo's Appeal, Accepting Plaintiff's Version*

In light of the above principles and the record in this case, we affirm the district court's denial of Vargo's Rule 59(e) motion for several reasons. Preliminarily, we note that although Vargo purports to accept plaintiff's version of the facts (*see, e.g.,* Vargo brief on appeal at 30 ("[a]ccepting for purposes of this appeal that no time . . . elapsed when Mr. O'Bert was out of the officers' sight"); *id.* at 15 ("accepting Plaintiff's version of events"); *id.* at 27 (viewing the permissible inferences "in the light most favorable to the plaintiff")), his brief on appeal is replete with his own versions of the events. For example, detailing his own deposition testimony and that of Fagerholm, Vargo's brief states that after the officers entered the trailer, O'Bert "disappeared down the hallway" (*id.* at 13); that according to Fagerholm, "O'Bert was 'out of our view[ ] for ten or fifteen seconds'" (*id.* at 11); that according to Vargo, "O'Bert was out of his view for about one minute after he entered the trailer" (*id.*); that after the officers entered, "O'Bert had ample opportunity to access a gun" without being observed by the officers (*id.* at 13); that after reappearing following his alleged disappearance, O'Bert gave "the impression that he was armed" (*id.*); that Vargo shot O'Bert when O'Bert "swung around so fast that the officers could not see whether he had a gun in his right hand" (*id.* at 3; *see id.* at 17 ("so fast that the officers could not see whether or not he was armed")); and that "O'Bert [spun] around quickly with his hand cocked in a forty-five degree angle as though he was holding a gun" (*id.* at 33).

These assertions by Vargo are disputed by plaintiff, who contends, *inter alia,* that O'Bert was never out of the officers' sight long enough to access a weapon (*see, e.g.,* Plaintiff's response to Vargo's Statement of Undisputed Facts ¶¶ 58, 69); that the level of alcohol found in O'Bert's blood suggests that O'Bert was too intoxicated to move with the blinding speed attributed to him (*id.* ¶ 91); and that, contrary to any suggestion that Vargo was influenced by the angle of O'Bert's right hand, Vargo could not then see O'Bert's right hand (*id.* ¶ 92 (citing Deposition of Vargo ("Vargo Dep.") at 138 (Vargo "could not see his right hand at any time before [Vargo] shot him"))).

To the extent that Vargo's version of the events is disputed by plaintiff, Vargo's version forms no proper basis for this appeal,

for the district court's interlocutory ruling is not immediately appealable except to the extent that Vargo contends that plaintiff's own version of the facts entitles Vargo to judgment as a matter of law. We therefore disregard so much of Vargo's version as is contrary to plaintiff's version.

Plaintiff's version of the facts, with all permissible inferences drawn in his favor, is that the officers decided to enter the trailer knowing, based on Gemperlein's observations through the trailer window, that O'Bert was unarmed. Gemperlein continuously watched O'Bert through the window from the time she first observed him without a weapon until just seconds before Fagerholm kicked the front door in and the officers entered, and she saw that he remained unarmed. Given those observations, it could permissibly be inferred that "at the moment the officers entered the trailer they observed O'Bert without a gun in his hands," Summary Judgment opinion at 34, *i.e.*, that the officers knew that he remained unarmed. After the officers entered the trailer, which was brightly lit, O'Bert was never out of Vargo's sight. Although O'Bert eventually stood with his right hand beyond the officers' view, there was no way, after the officers entered and saw that he was unarmed, that he could have seized a gun without Vargo's seeing him do so. Accordingly, Vargo knew that O'Bert was unarmed.

Further, the actions of Fagerholm provide strong circumstantial evidence that the officers knew that O'Bert remained unarmed: Whether or not Fagerholm lunged at O'Bert, it is undisputed that Fagerholm walked to within a few feet of O'Bert and put away his own gun. That conduct would have been foolhardy if the officers had any reason to believe O'Bert had a gun in his hand, because Fagerholm could easily have been shot or grabbed as a hostage. A rational factfinder could eas-ily infer that Fagerholm's holstering his gun after placing himself within O'Bert's reach belies Vargo's claim that the officers believed that O'Bert could be armed.

Moreover, a reasonable factfinder could find that in fact Fagerholm did proceed to lunge at O'Bert and that O'Bert merely moved in response to that lunge. Vargo told a police investigator, in an interview conducted just hours after the shooting, that O'Bert had not swung around until after Fagerholm (nicknamed "Skip") attempted to grab O'Bert: "Skip at one point went to grab him *and then* all of a sudden he just twisted real quick." (Interview of Sgt. Robert Vargo by Det. Sgt. Joel R. Davidson, April 9, 2000, at approximately 1:23 a.m. ("Vargo Interview"), at 2 (emphasis added).) Despite Vargo's present position to the contrary (reflected in his deposition testimony a year and a half after the event, *see* Vargo Dep. at 139 ("remembering it, going over and over it again, [O'Bert] twisted first and it's my testimony that he twisted first")), a rational factfinder could easily choose to credit Vargo's original statement to the police investigator that O'Bert had moved only after Fagerholm lunged.

Vargo urges us to view it as immaterial whether O'Bert or Fagerholm moved first. We decline that invitation in light of Vargo's deposition testimony that, as a police officer, he had been "aware that if Sergeant Fagerholm did try to grab Mr. O'Bert, he might, Mr. O'Bert might move in response to that" (Vargo Dep. at 133). Thus, if, as Vargo informed the police investigator, O'Bert did not move until Fagerholm attempted to grab him, Vargo shot O'Bert, whom he knew to be unarmed, in response to a movement that Vargo expected.

Finally, although Vargo relentlessly emphasizes the fact that "O'Bert had threatened to blow the officers['] heads off just

minutes before" the officers decided to enter the trailer (Vargo brief on appeal at 33; *see also id.* at 2, 4, 9, 17, 26, 30, 36, 37, 39, 42), that argument focuses on the wrong period of time. As discussed in Part II.A. above, the objective reasonableness inquiry must focus on Vargo's knowledge of the circumstances immediately prior to and at the moment of his decision to use deadly force, *i.e.*, his decision to "tap[ ] one shot right in [O'Bert's] center mass" (Vargo Interview at 2). The threat made by O'Bert prior to the officers' entry into the trailer cannot enter into the reasonableness calculus because, after that threat was made, Gemperlein observed that O'Bert was unarmed; the officers entered the trailer precisely because they knew O'Bert was not armed; and because they never lost sight of him thereafter, they knew that he remained unarmed. The earlier threat did not give Vargo license to shoot to kill a man he knew, immediately before and at the moment of the shooting, was unarmed.

In sum, although Vargo's appeal is purportedly premised on his acceptance of plaintiff's version of the facts and all permissible inferences that could be drawn in plaintiff's favor, that version and those inferences plainly do not entitle Vargo to judgment as a matter of law. On plaintiff's version of the facts, in which Vargo shot to kill O'Bert while knowing that O'Bert was unarmed, it is obvious that no reasonable officer would have believed that the use of deadly force was necessary.

## III. PLAINTIFF'S CROSS–APPEAL

In his cross-appeal, plaintiff seeks reversal of the district court's dismissal of his unlawful entry claims against Vargo and Fagerholm. For the reasons that follow, we conclude that the cross-appeal is not properly before us.

The district court's granting of defendants' motion for summary judgment dismissing the unlawful entry claims was not immediately appealable because, given the refusal to dismiss the excessive force claim, the dismissal of the unlawful entry claims was not a final decision, *see, e.g.,* Fed.R.Civ.P. 54(b). Except with respect to certain types of orders not present here, the federal courts of appeals have jurisdiction only over final judgments, *see* 28 U.S.C. § 1291; a final judgment is one that conclusively determines all of the rights of the parties to the litigation, *see, e.g., Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

Rule 54(b), however, provides a procedure for the entry of a partial final judgment, thereby permitting an immediate appeal from that judgment, when the district court determines that such an appeal is needed to avoid harshness or injustice. That Rule provides, in pertinent part, as follows:

> When more than one claim for relief is presented in an action, ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... *only upon an express determination that there is no just reason for delay* and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order ... which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order ... is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed.R.Civ.P. 54(b) (emphasis added). The matter of whether to direct the entry of a partial final judgment in advance of the

final adjudication of all of the claims in the suit must be considered in light of the goal of judicial economy as served by the " 'historic federal policy against piecemeal appeals.' " *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438, 76 S.Ct. 895, 100 L.Ed. 1297 (1956)); *see Cullen v. Margiotta*, 811 F.2d 698, 710 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), *overruled on other grounds, Agency Holding Corp. v. Malley–Duff & Associates, Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). Respect for that policy requires that the court's power to enter a final judgment before the entire case is concluded, in order to permit an aggrieved party to take an immediate appeal, be exercised sparingly. The district court should bear in mind that "[n]ot all" dismissals of "individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. at 8, 100 S.Ct. 1460. "The power which this Rule confers upon the trial judge should be used only in the infrequent harsh case," *Cullen v. Margiotta*, 618 F.2d 226, 228 (1980) (per curiam) (internal quotation marks omitted), *i.e.*, certification should be "granted only if there exists 'some danger of hardship or injustice through delay which would be alleviated by immediate appeal,' " *id.* (quoting *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 183 (2d Cir.1978)).

▮ Since the Rule 54(b) certification is reviewable for abuse of discretion, *see, e.g., Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. at 8–10, 100 S.Ct. 1460 (to justify reversal, district court's determination must be "clearly unreasonable"); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. at 437, 76 S.Ct. 895; *Cold Metal Process Co. v. United Engineering and Foundry*

*Co.*, 351 U.S. 445, 452, 76 S.Ct. 904, 100 L.Ed. 1311 (1956), it does not suffice for the district court to announce its determination that "there is no just cause for delay" in conclusory form. Rather, its certification must be accompanied by a reasoned, even if brief, explanation of its conclusion. *See, e.g., Cullen v. Margiotta*, 811 F.2d at 711; *Cullen v. Margiotta*, 618 F.2d at 228. Accordingly, we have frequently dismissed appeals where no reasoned explanation for the Rule 54(b) judgment was given. *See, e.g., National Bank of Washington v. Dolgov*, 853 F.2d 57, 58 (2d Cir. 1988) (per curiam) (haec verba certification); *Cullen v. Margiotta*, 618 F.2d at 228 (haec verba certification); *Brunswick Corp. v. Sheridan*, 582 F.2d at 183 (stated reasons for certification inadequate); *Arlinghaus v. Ritenour*, 543 F.2d 461, 463–64 (2d Cir.1976) (per curiam) (haec verba certification). *See also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 21 (2d Cir.1997) (the immediate appealability of the dismissal of one set of claims is an insufficient reason to enter a Rule 54(b) judgment with respect to other dismissed claims).

On rare occasions we have excused the absence of an adequate explanation "[w]here the reasons for the entry of judgment [we]re obvious ... and a remand to the district court would result only in unnecessary delay in the appeal process." *Fletcher v. Marino*, 882 F.2d 605, 609 (2d Cir.1989) (inadequate explanation excused where the need for expedition was obvious, as was the nature of the public concern presented by the issues); *see Perez v. Ortiz*, 849 F.2d 793, 796–97 (2d Cir.1988) (accepting jurisdiction where reasons district court would have stated on remand were obvious). Most recently, we excused a district court's insufficient explanation for entering a Rule 54(b) judgment because the case was an unusual one in

which there was properly before us an interlocutory appeal presenting a substantive issue that was dispositive of both the interlocutory appeal and the dismissed claims. *See Cuoco v. Moritsugu,* 222 F.3d 99, 110 (2d Cir.2000) (*"Cuoco"*). Although the district court had entered a Rule 54(b) judgment on the dismissed claims but "offered no explanation for entering a partial final judgment[,] ... stating conclusorily that it 'perceive[d] no just reason for delay in the entry of judgment of dismissal in favor of those defendants,'" and although "[o]rdinarily, this insufficiency would [have] prevent[ed] us from exercising appellate jurisdiction over th[e] cross-appeal," we concluded that we could excuse the lack of a proper certification because the case presented "the unusual situation in which the entire case [wa]s before us via the Defendants–Appellants' interlocutory appeal." *Id.*

In the present case, in an Order dated July 11, 2002 ("Rule 54(b) Order"), the district court directed the entry of a Rule 54(b) judgment without in any way suggesting that entering final judgment on the unlawful entry claims at the usual stage, *i.e.,* when all claims have been adjudicated, would cause plaintiff any injustice or undue hardship. Citing *Cuoco,* the court began as follows:

"Ordinarily," the district court's determination "'must be accompanied by a reasoned, even if brief explanation ... that there is no just cause for delay; a certification that is conclusory or merely quotes the words of the Rule is insufficient.'" *Cuoco v. Moritsugu,* 222 F.3d 99, 110 (2d Cir.2000) .... In "the unusual situation" in which the entire case will be put before the Second Circuit because of Defendants' interlocutory appeal from a denial of qualified immunity, however, *the district court need not even offer an explanation for entering partial*

*final judgment. See Cuoco,* 222 F.3d at 110. The Second Circuit will accept the district court's decision to certify because, in that situation, it will certainly "limit piecemeal litigation and maximize judicial efficiency." *Id.*

Rule 54(b) Order at 1–2 (emphasis added). The district court then noted that Vargo was appealing the denial of his Rule 59(e) motion with respect to the excessive force claim and did "not need permission from th[e district] Court to seek an interlocutory appeal [from the denial of a qualified-immunity-based motion for summary judgment that accepts the plaintiff's version of the facts]." *Id.* at 2. The court concluded as follows:

The Second Circuit, therefore, will likely have jurisdiction over Vargo's interlocutory appeal. Given that factor, this Court finds that granting Plaintiff's motion for final partial judgment is appropriate. *By this Court's certification of the "illegal entry" claims and Vargo's interlocutory appeal, the Second Circuit will have before it the entire case.* The single, consolidated appeal will serve judicial efficiency and limit piecemeal appeals.

*Id.* at 3–4 (emphasis added). Thus, the court felt that no explanatory certification was needed other than the fact that its entry of a Rule 54(b) judgment would bring the remainder of the case before the court of appeals.

We have difficulties both in principle and in practice with the district court's entry of its Rule 54(b) judgment in this case in reliance on *Cuoco.* First, the court's articulation of its rationale differs from the principle stated in *Cuoco.* Although the district court accurately described the *Cuoco* exception as applicable where "the entire case will be put before the Second Circuit *because of Defendants' interlocutory appeal,*" Rule 54(b) Order at

2 (emphasis added); *see Cuoco*, 222 F.3d at 110 ("the entire case is before us *via the Defendants–Appellants' interlocutory appeal* " (emphasis added)), the district court stated that here, upon Vargo's interlocutory appeal, we would have the entire case before us "*[b]y th[e district] Court's certification* of the 'illegal entry' claims," Rule 54(b) Order at 3 (emphasis added). Thus, the district court's rationale is not the same as that of *Cuoco*. The limited exception made by *Cuoco* is applicable only where the dispositive issues are brought before this Court by the permissible interlocutory appeal itself, not where issues as to dismissed claims would come before us only by reason of the district court's entry of a Rule 54(b) judgment. And, as noted above, the simple fact that part of the case is immediately appealable is not a sufficient reason to enter a Rule 54(b) judgment as to another part. *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d at 21.

Second, as a practical matter, the circumstances of the present case do not parallel those of *Cuoco*. In that case, the plaintiff, a preoperative male-to-female transsexual being held as a pretrial detainee, complained of the denial of synthetic estrogen injections during that detention. The complaint named a number of defendants, but it stated only a single grievance: the denial of estrogen treatment. Some of the defendants were dismissed from the case on the ground that the complaint failed to state a claim on which relief could be granted against them. The other defendants remained undismissed; their immunity-based motions for summary judgment were denied; and they appealed the denials of summary judgment, contending that the refusal to give such estrogen treatments was objectively reasonable as a matter of law. Our decision on the interlocutory appeal that the refusal to give the requested treatment was objectively reasonable as a matter of law thus entirely resolved the merits of the dismissed claims against the other defendants who had refused such treatment. Accordingly, our dealing with the dismissed claims eliminated the possibility of any further appeals in the case.

The present complaint, in contrast, asserts two sets of claims, one for unlawful entry and one for the use of excessive force. The resolution of Vargo's claim that he was entitled as a matter of law to qualified immunity for his use of deadly force after entering O'Bert's trailer has no bearing on the question of whether the officers were justified—either by exigent circumstances or by the consent of Miller, as the district court ruled—in entering O'Bert's trailer without a warrant. The two claims are substantively different, they focus on different considerations, and they focus on different periods of time. This case thus does not parallel the unusual structure of *Cuoco*, where the resolution of the lone permissible appeal from the undismissed claim effectively disposes of the claims that were dismissed.

We add one further note, given that the only reason stated by the district court for entering a Rule 54(b) judgment with respect to the unlawful entry claims was that Vargo would be able to take an immediate appeal with respect to the claim of excessive force. Vargo predicated his Rule 59(e) motion and his claimed right to take an immediate appeal on his purported acceptance of plaintiff's version of the facts. But, as the district court noted in denying the Rule 59(e) motion, on plaintiff's version of the facts Vargo could not prevail. In consequence, the case was virtually certain to return to the district court for additional proceedings on the excessive force claim, and the entry of a partial final judgment as to other claims could not have had the

effect of ending the case and thereby preventing piecemeal appeals.

For the foregoing reasons, we conclude that the district court's entry of the Rule 54(b) judgment as to the unlawful entry claims was improvident and was insufficient to give this court jurisdiction over the cross-appeal. Accordingly, the cross-appeal is dismissed.

## CONCLUSION

We have considered all of Vargo's arguments on his appeal that are properly before us and have found them to be without merit. The order denying his Rule 59(e) motion is affirmed. Plaintiff's cross-appeal is dismissed for lack of appellate jurisdiction.