16-1366-cv
*Estate of Jaquez v. City of N.Y.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "Summary Order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of September, two thousand seventeen.

Present:
　　　　　PETER W. HALL,
　　　　　GERARD E. LYNCH,
　　　　　CHRISTOPHER F. DRONEY,
　　　　　　　*Circuit Judges.*

---

THE ESTATE OF MAURICIO JAQUEZ, by The Public Administrator of Bronx County as administrator of the Good, Chattels and Credit of the deceased Mauricio Jaquez, ANA MARTINEZ,

　　　　　*Plaintiffs - Appellants*,

v.

CITY OF NEW YORK, SERGEANT WILLIAM FLORES, Shield No. 1023, Individually and in his official capacity, DETECTIVE RAYMOND MORRISSEY, Shield No. 744, Individually and in his official capacity, DETECTIVE RAYMOND FLOOD, Shield No. 744, Individually and in his official capacity, DETECTIVE RICHARD HENDERSON, Shield No. 1033, Individually and in his official capacity, DETECTIVE DAVID MCNAMEE, Shield No. 7273, Individually and in his official capacity,

16-1366-cv

1

16-1366-cv
*Estate of Jaquez v. City of N.Y.*

Defendants - Appellees,

NYC Police Officers JOHN DOES,

Defendants.

| | |
|---|---|
| For Appellants: | ZACHARY MARGULIS-OHNUMA, New York, NY |
| For Appellees: | SUSAN PAULSON, Assistant Corporation Counsel (Deborah A. Brenner, *on the brief*), *for* Zachary W. Carter, Corporation Counsel of the City of New York, New York, NY |

Appeal from an Order dated June 9, 2014, an Order dated May 8, 2015, and Judgment entered April 12, 2016 by the United States District Court for the Southern District of New York (Forrest, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants the Estate of Mauricio Jaquez and Ana Martinez ("Appellants") appeal from the district court's orders dismissing their claims against the City of New York,[1] and granting summary judgment in favor of Defendants-Appellees New York City police officers Flores, Morrissey, Flood, Henderson, and McNamee ("Appellees") on the basis of qualified immunity for their use of non-lethal force and initial use of lethal force. Appellants also appeal from the district court's order, issued following a jury trial, granting qualified immunity to

---

[1] Although Appellants' notice of appeal indicates their intent to appeal the June 9, 2014 order dismissing their claims against the City of New York, they have abandoned that claim by failing to brief the issue.

2

Defendant-Appellee Officer Flores with respect to his use of lethal force in firing the final shot, as well as a jury verdict in favor of Officer Flores determining that he was not liable for firing the final shot.

## I. BACKGROUND

### A. The Arrest

The following facts are undisputed unless otherwise noted. This appeal concerns a series of events that took place in a Bronx apartment on April 12, 2009. Appellees arrived at the residence of Mauricio Jaquez ("Jaquez") in response to a 911 call reporting that Jaquez and his wife were fighting and that Jaquez was armed with a knife.

When the officers arrived, they entered the apartment and tried to persuade Jaquez to surrender. At some point, Jaquez advanced down the hallway of the apartment, and a struggle ensued as the officers attempted to arrest Jaquez. During that struggle, after Officer Henderson had deployed his Taser, Jaquez attacked Officer Flood with the knife, swinging the knife over Flood's ballistic shield, and making contact with Officer Flood in the shoulder and elbow. Officer Flores and Officer Morrissey deployed their Tasers, but that did not stop Jaquez. Because, according to the officers' testimony, Jaquez remained armed and continued to attack the officers, after yelling at Jaquez to drop the knife, Officer McNamee shot Jaquez with three to four rubber bullets from a "Sage gun," which also failed to stop Jaquez. As the struggle continued, Jaquez attempted to stab Officer McNamee, Officer Henderson again deployed his Taser, and Officers Morrissey and Flores fired

live ammunition. Jaquez was struck with four bullets, one of which, according to the medical examiner, ultimately proved fatal, and he fell to the ground face-down while still holding the knife. Officer Flores fired a final shot of live ammunition that struck Jaquez in the head when Flores perceived Jaquez to be pushing himself off the floor. Jaquez was placed in an ambulance and died on his way to the hospital.

### B. Summary Judgment

Jaquez's estate commenced this § 1983 action in the Southern District of New York. The officers moved for summary judgment based on qualified immunity. Appellants countered that proffered testimony of their proposed expert, Dr. Richard Sullivan, created a factual dispute about the officers' description of the shooting. Dr. Sullivan opined that Jaquez was in a psychotic state and that when the officers entered the apartment with weapons and body armor, this escalated Jaquez's reactions. Dr. Sullivan further opined that the trajectory of the bullets described by Dr. Kristen Landi, the assistant medical examiner who completed the autopsy report, contradicted the officers' accounts of the events. That is, Dr. Sullivan also opined that, because the autopsy report indicated that the bullets entered Jaquez's body from above, the bullets' trajectory indicated that the officers were above Jaquez when he was shot, which Appellants contend would contradict the officers' claim that Jaquez was standing and attacking them at the time they deployed live ammunition. Finally, Dr. Sullivan proposed to testify that it would have been impossible, based on the injuries suffered, for Jaquez to push himself off the floor and continue attacking the officers after the first gunshot wounds. This led Dr.

4

Sullivan to conclude that "Mr. Jaquez . . . was on the ground when four out of five of the shots were fired and likely already on the ground or on the way when the remaining shot . . . was fired," and that he "posed no conceivable threat to anyone after [the fatal wound] was inflicted." Suppl. App. 920. Appellees moved to preclude Dr. Sullivan's testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Initially, the district court denied summary judgment, concluding that Dr. Sullivan's proffered expert testimony created a genuine issue of fact material to the officers' liability. On further consideration of the expert report, however, the district court excluded Dr. Sullivan's proposed testimony and granted the Appellees' motion for summary judgment except with respect to Officer Flores's final shot. The district court concluded that Dr. Sullivan's testimony was unreliable because his expertise was in emergency medicine, not in analyzing crime scenes, and his opinions were not based on scientific evidence, experience, or research. The district court also determined that Dr. Sullivan's testimony usurped the jury's role because he made credibility determinations regarding whether the officers' testimony was truthful. The district court, however, denied summary judgment with respect to Officer Flores's final shot, concluding that there was a triable issue of fact as to whether a reasonable officer could conclude that Jaquez posed a threat when Officer Flores fired the final shot.

### C. Trial

Before trial, Appellees moved to exclude certain evidence. The district court concluded that Appellants' motorized life-sized model of Jaquez would be unduly prejudicial given other available evidence explaining the trajectory of the bullets. The district court also excluded as unduly prejudicial two photographs from before the events of April 12, 2009 that depicted Jaquez with his wife and child, and Jaquez holding an infant. The district court next denied Appellees' motion to preclude the crime scene report and allowed the report subject to redactions. With respect to the photographs attached to the crime scene report, the district court allowed eight of ninety photos showing where the final shot occurred. The court prevented Appellants from introducing into evidence some of the officers' weapons, tools, and ammunition, but did allow Appellants to introduce the Sage gun, which fires rubber bullets, a ballistic vest, and a ballistic shield.

The only issue presented to the jury was whether Officer Flores used excessive force when he fired the final shot after Jaquez was on the floor. The jury returned two verdicts with respect to the final shot. In the first verdict, the jury responded to two special interrogatories, finding that Jaquez was pushing himself up from the floor and had a knife in his hand as Officer Flores fired the final shot. In the second verdict, the jury found that Officer Flores did not use excessive force against Jaquez. On the basis of the jury's factual findings in response to the special interrogatories, the district court granted Officer Flores's motion for qualified

immunity. Following the trial, Appellants moved for judgment as a matter of law, which the court denied.

## II.    STANDARDS OF REVIEW

We review *de novo* a district court's grant of summary judgment, viewing the facts in the light most favorable to the Appellants. Fed. R. Civ. P. 56(a); *Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 138 (2d Cir. 2017). We review *de novo* a district court's denial of a judgment as a matter of law. *Morse v. Fusto*, 804 F.3d 538, 546 (2d Cir. 2015). We review the district court's evidentiary rulings for abuse of discretion. *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 385 (2d Cir. 2006). Finally, "[a] jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000). The formulation of special verdict questions further "rests in the sound discretion of the trial judge, and will warrant reversal only if the questions mislead or confuse the jury, or inaccurately frame the issues to be resolved." *Cash v. Cty. of Erie*, 654 F.3d 324, 340 (2d Cir. 2011) (citation omitted).

## III.    DISCUSSION

### A. Qualified Immunity

Qualified immunity serves as a defense when an officer's conduct does not violate clearly established law or it was objectively reasonable for the officer to

believe that his conduct did not violate such law. *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (alteration in original) (internal quotation marks omitted). "The objective reasonableness test is met—and the defendant is entitled to immunity—if officers of reasonable competence could disagree on the legality of the defendant's actions." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (internal quotation marks omitted). The determination of reasonableness must account for "the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Because Jaquez cannot testify to contradict the officers' testimony, "the court must also consider circumstantial evidence that, if believed, would tend to discredit the police officer's story, and consider whether this evidence could convince a rational factfinder that the officer acted unreasonably." *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003) (internal quotation marks omitted).

Taking the facts in the light most favorable to Appellants, there is no triable issue of fact with respect to the objective reasonableness of the officers' use of non-lethal force. *See Doninger v. Niehoff*, 642 F.3d 334, 349 (2d Cir. 2011). Even assuming Jaquez did not have the knife in his hand when he walked down the

hallway,[2] the officers testified that they could not see Jaquez's hand in that moment and they could not determine that he was unarmed when they deployed the Taser. Thus, in the moments that Jaquez was walking down the hallway "officers of reasonable competence could disagree" as to whether Jaquez was a threat because the officers knew Jaquez had easy access to a fillet knife, was acting erratically, and was refusing to obey the officers' commands. *Thomas*, 165 F.3d at 143; *see Graham,* 490 U.S. at 396–97.

After the first deployment of the Taser, Jaquez moved backwards around the corner into the bathroom, out of the officers' view. The officers proceeded down the hallway towards the bathroom to arrest Jaquez. Appellants argue that there is a genuine material dispute about whether Jaquez was attacking the officers when they entered the bathroom and used non-lethal and lethal force. We disagree. Appellants did not put forth sufficient competent evidence to create a genuine dispute about whether Jaquez was attacking the officers with a knife in the bathroom. Moreover, because of Jaquez's refusal to follow commands, his close proximity to a lethal weapon, and his behavior up to that point, the arresting officers reasonably could have believed that Jaquez posed a threat. *See Graham*, 490 U.S. at 396–97. Officers of reasonable competence, therefore, could disagree whether the officers' later use of their Tasers and, after a physical altercation between an officer and Jaquez, the officers' use of the Sage Gun were reasonable.

---

[2] In support of this view, Appellants point to deposition testimony by Detective Cannizzaro, who was operating a camera in Jaquez's apartment and relaying what he observed to the other officers. According to Cannizzaro, Jaquez appeared to have complied with the officers' orders to put the knife down before he moved down the hallway toward the officers.

Appellants also contend that the district court improperly granted summary judgment on the officers' initial use of lethal force. Appellants' assertions that (1) the downward trajectory of bullets demonstrated that Jaquez was lying on the ground, (2) the trajectory of the bullets reflects that Jaquez's right arm was pulled back and not advancing at the officers, and (3) Jaquez was shorter than Officer McNamee and could not have reached his neck with the knife, do not create material disputes of fact as to whether the officers' initial decision to use deadly force was reasonable. In other words, the limited circumstantial evidence indicating the possible positions of the officers and Jaquez at the time that they initially fired live ammunition is insufficient to defeat summary judgment on qualified immunity. There is no dispute that immediately prior to the officers' use of lethal force Jaquez threatened the officers with a knife—thus engaging in the use of lethal force himself. Considering the facts and circumstances of this case "from the perspective of a reasonable officer on the scene" and "allow[ing] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," a reasonable officer could believe that Jaquez's attack on Officer McNamee reasonably posed a continued "threat to the safety of the officers." *Graham*, 490 U.S. at 396–97. At bottom, therefore, reasonable officers could disagree as to whether lethal force was an appropriate response. *See Thomas*, 165 F.3d at 143. Absent any evidence contradicting the facts above, Appellees were

10

entitled to summary judgment on their qualified immunity defense for their use of non-lethal and initial use of lethal force.

## B. The District Court Did Not Err in Denying Appellants' Request for a Directed Verdict

"[A] district court must deny a motion for judgment as a matter of law unless, viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Cobb v. Pozzi*, 363 F.3d 89, 101 (2d Cir. 2004) (second alteration in original) (internal quotation marks omitted). A movant's burden under Rule 50(b) to obtain post-verdict relief "is particularly heavy," and "the district court may set aside the verdict only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . [there is] such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." *Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005) (alteration in original) (internal quotation marks omitted).

Viewing the record in the light most favorable to the Appellees, at the time Officer Flores fired the final shot, the jury was able to conclude that Officer Flores reasonably perceived Jaquez as a continued threat. Officers McNamee and Morrissey testified that Jaquez was pushing himself up off the floor prior to the moment Officer Flores fired the final shot. The jury's finding was not the "result of

sheer surmise and conjecture," but based on the officers' testimony, the crime scene report, and other evidence in the record that the jury determined to be credible. *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008). The district court therefore properly denied Appellants' motions for a directed verdict.

## C. The District Court Did Not Abuse Its Discretion in Its Evidentiary Rulings

The district court did not exceed the bounds of its discretion by excluding Dr. Sullivan's expert testimony in which he would have opined on Jaquez's psychological state and police tactics when arresting an emotionally disturbed person. Dr. Sullivan was not shown to have expertise in psychiatric diagnosis, or on the standard police tactics in dealing with situations like that confronting the officers on the day in question. Although Dr. Sullivan's ability to opine on the immediate effects of the gunshot wounds Jaquez had already suffered on his ability to continue attacking the officers at the time of Flores's final shot is a closer question, we conclude that the district court's exclusion of that testimony was also within its discretion. Dr. Sullivan had only treated four or five gunshot wounds in his career, and it was permissible for the district court to conclude that his opinion on that subject was insufficiently reliable. (We note, moreover, that the district court invited Appellants to submit a replacement expert report before the trial on the final shot. Appellants declined to do so.).

With respect to Appellants' challenges to the district court's exclusion of a life-sized model of Jaquez, portions of the crime scene report, two photographs of Jaquez and his family, and the officers' weapons not used to fire the final shot, we

conclude the district court acted within its discretion. The court weighed the probative value of this evidence against the potential for it to confuse the jury and prejudice the defense. Its conclusion that some of this evidence was cumulative of other evidence already admitted in the record was reasonable. The district court did not abuse its discretion in ruling as it did here.

Appellants also contend that the district court abused its discretion when it allowed Dr. Landi, who authored the autopsy report on Jaquez, to testify on the effect of the gunshot wounds. Specifically, Dr. Landi at several points testified that the injuries resulting from the live ammunition would not have affected Jaquez's ability to push himself up off the floor. Appellants' trial counsel did not object to that line of questioning until later, when the district court overruled an objection to a question concerning whether the injuries from the gunshot wounds would "have any impact on Mr. Jaquez's ability to hold a knife inside his hand and grasp it." Suppl. App. 1936–37. Appellants' general objection to the question about Jaquez's ability to hold the knife was insufficient to preserve an objection to the earlier questions concerning Jaquez's ability to push himself up off the floor. Thus, we review for plain error, which we have long held "should only be invoked with extreme caution in the civil context." *Rasanen v. Doe*, 723 F.3d 325, 333 (2d Cir. 2013). Although Dr. Landi's testimony was arguably improper, it did not so clearly "contravene an established rule of law" and "go to the very essence of the case" that we can find its admission plainly erroneous. *Id.*

### D. The District Court Did Not Commit Error By Instructing the Jury That It Had Granted Qualified Immunity to the Other Officers or Abuse Its Discretion By Providing the Jury with Special Interrogatories

The district court's jury instructions were not erroneous as they properly informed the jury of the narrow issue before it—whether Flores's firing of the final shot was reasonable. *See Graham*, 490 U.S. at 396–97. The district court explained at the beginning of trial that the only issue before the jury was the reasonableness of Flores's final shot. To limit the questions before the jury, and because there was testimony introduced at trial as to these officers' conduct and their use of force, the district court instructed that it had already determined that the officers acted reasonably in connection with the uses of force other than the final shot by Officer Flores. The district court also instructed the jury that none of its rulings or actions represented a determination concerning the credibility of witnesses or revealed its opinion about the appropriate verdict in this case. Nothing about these instructions could have misled the jury concerning the correct legal standard to be applied or otherwise misinformed the jury on the law. *See Gordon*, 232 F.3d at 116.

The district court's special interrogatories were not erroneous. *See Cash,* 654 F.3d at 340. Despite Appellants' argument that they were "sandbagged," Appellants' Br. 59, the district court informed the parties of its intent to provide the jury with special interrogatories at a pre-trial conference, and again on the first day of trial. Much of the testimony at trial discussed the events leading up to the final shot. It was reasonable for the district court to ask the jury specific factual questions the answers to which would assist the district court in determining whether Flores was

14

entitled to qualified immunity with respect to the final shot. Whether Jaquez was pushing himself off the floor and holding a knife at the time of the final shot were plainly relevant to the question of whether Flores acted reasonably in shooting him again. Submitting these interrogatories to the jury did not mislead the jury or inadequately inform it of the law. The district court did not exceed the bounds of its discretion in issuing these special interrogatories.

We have considered Appellants' remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk