Rasanen v. Brown

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: February 28, 2013     Decided: July 19, 2013)

Docket No. 12-680-cv

---

Leroy J. RASANEN,

As administrator of the estate of John C. Rasanen, deceased,

*Plaintiff-Appellant*

– v. –

John Doe, Rhonda Roe, said names being fictitious and intended to represent all police officers taking part in the occurrence that resulted in decedent's death, James W. Dewar, John W. O'Brien, Keith M. Skala, Tyler R. Finn, Tammy M. Mickoliger, Rodney C. Polite, Alan T. Brock, Michael Etherton, David H. Verne, Scott G. Dibble, Robert A. Buell, Paul C. Antonovich, Timothy C. Pidgeon, Bartosz J. Chilicki, Michael A. Pellegrino,

*Defendants,*

Daniel BROWN

*Defendant-Appellee.*

---

Before: CALABRESI, *Senior Circuit Judge*, POOLER and RAGGI, *Circuit Judges*.

Appeal from a Decision and Order of the United States District Court for the Eastern District of New York (Spatt, J.) denying plaintiff's motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a). In the underlying action, plaintiff alleged, pursuant to 42 U.S.C. § 1983, that defendant, a New York State Police trooper, used excessive force in violation of the Fourth Amendment. At the end of a jury trial, the jury

found for defendant. Plaintiff moved for a new trial based, among other reasons, on alleged flaws in the jury instructions; the district court denied the motion. VACATED and REMANDED.

Judge RAGGI dissents in a separate opinion.

HARRY H. KUTNER JR., Esq., Law Offices of Harry H. Kutner Jr., Mineola, N.Y., *for Plaintiff-Appellant*.

WON S. SHIN, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Cecelia C. Chang, Deputy Solicitor General, *of counsel*) *for* Eric T. Schneiderman, Attorney General of the State of New York, New York, N.Y., *for Defendant-Appellee*.

CALABRESI, *Circuit Judge*:

Plaintiff-Appellant Leroy J. Rasanen is the father and estate administrator of John C. Rasanen, who was shot and killed by Defendant-Appellee Daniel Brown, a New York State Police trooper, during a (warranted) search of John Rasanen's home. Plaintiff began this action against Brown and others in May 2004. Plaintiff's September 2004 amended complaint alleged one cause of action under 42 U.S.C. § 1983 and another for negligence. Plaintiff's § 1983 claim asserted that the fatal shooting of John Rasanen constituted excessive force; his negligence claim alleged, in the alternative, that the shooting, as well as the planning and execution of the search during which the shooting occurred, was negligent.

A jury trial in the matter started on April 5, 2011. The district court had granted summary judgment in March 2009 on the excessive force claim to all defendants except

Brown and Michael Etherton, who was with Brown at the time of the shooting. At trial, plaintiff voluntarily dismissed the excessive force claim against Etherton, and the court dismissed plaintiff's negligence claims as a matter of law. There was no evidence, the court reasoned, that any alleged negligence in planning the search was causally connected with the shooting of John Rasanen, nor was there any evidence that the shooting was not intentional. Thus, by the time the jury began its deliberations on April 27, 2011, the only cause of action remaining was the excessive force claim against Brown.

On May 6, 2011, after more than seven days of deliberation, the jury returned a unanimous verdict in favor of Defendant Brown. Soon thereafter, plaintiff moved for a new trial under Federal Rule of Civil Procedure 59, alleging, *inter alia*, flaws in the jury instructions. The district court denied that motion in a Decision and Order dated January 23, 2012. This appeal followed.

For reasons given below, we VACATE the judgment of the district court and REMAND for a new trial.

## BACKGROUND

Early in the morning of May 17, 2002, a mobile response team of the New York State Police searched the Suffolk County, New York residence of John Rasanen. A warrant authorized the team to look for cocaine, marijuana, drug paraphernalia, illicit proceeds, and other contraband. The team consisted of Trooper Daniel Brown; his assigned partner, Michael Etherton; and six other state troopers. The team had previously been told that

3

Rasanen had threatened police officers, and that he was armed, dangerous, and unpredictable. The warrant allowed the team to enter Rasanen's residence between 6 a.m. and 9 p.m. A Crime Scene Attendance Log indicates that the first members of the team entered the home at 5:53 a.m.

After entering the residence, the troopers fanned out, two by two, to secure the building. Trooper Brown, followed by Trooper Etherton, went downstairs. Brown, who carried a halogen flashlight in his left hand and a 9-mm. pistol in his right, kicked open the door to a small bedroom, where he found Rasanen with a friend, Angela Chinnici. Although members of the response team had been told that Rasanen was armed and dangerous, that morning he was in fact unarmed, and from the waist up naked.

Brown was heavily-armored. He wore a military helmet, a face shield, an armored vest, combat gloves and combat boots. He was larger than Rasanen by three inches and more than sixty pounds. Moments after Brown entered the bedroom, he fired a single shot into Rasanen's chest. Rasanen died within minutes.

At trial, the two surviving eye-witnesses, Brown and Chinnici, recounted what led to this shooting.

Brown testified that upon his first step or two into the bedroom, Rasanen charged at him. As he held Rasanen back with his flashlight, Brown said, he felt his own gun being turned against him. Brown was unsure whether Rasanen was using his hands or another part of his body to turn the gun. When he felt the gun moving, Brown dropped the

4

flashlight, gained control of the gun, and fired. This happened, Brown said, "all at once"—"in a matter of seconds." Brown insisted that he shot Rasanen out of fear for his own life.

Angela Chinnici, for her part, testified that she was asleep next to Rasanen in his bed when she was awakened by knocking on the front door upstairs. She then heard a loud bang, followed by footsteps and cries of, "Police, get down!" Chinnici woke Rasnanen and asked what was going on. Rasanen cursed, leapt out of bed, and closed the bedroom door. He then paced from side to side in the space between the door and the foot of the bed. As Chinnici heard the police coming down the stairs yelling "police" and "get down," she saw Rasanen drop something behind the television stand. Rasanen then resumed pacing, some two to three feet from the bedroom door. The room, Chinnici said, was dark and small.

Chinnici then saw the door open and Trooper Brown enter. Brown commanded Rasanen and Chinnici to get down. Chinnici complied; Rasanen apparently did not. Chinnici heard a loud pop, and saw a cloud of smoke. She did not see Rasanen lunge at Brown or struggle with Brown for the trooper's gun.

The jury began its deliberations on April 27, 2011. At one point, the jury asked the district court to define the terms "negligence" and "deadly excessive force." The district court declined to define negligence because the negligence claim had been dismissed, and the court refused to reinstate it. The district court defined "deadly excessive force" by repeating its original charge on excessive force and adding the word "deadly" at various places in the charge (the relevant portions of the charge are excerpted later in this opinion).

The jury additionally informed the court that it was considering a section of the New York State Police administrative manual entitled "Use of Deadly Physical Force." The court directed the jury to certain other provisions of the manual, which it said were also relevant to the jury's deliberations.

On May 5, 2011, the jury returned a unanimous verdict in favor of Trooper Brown on the excessive force claim. The district court denied plaintiff's Rule 59 motion for a new trial on January 23, 2012, and plaintiff timely appealed.

Before us, plaintiff-appellant argues that the district court erred (1) by failing to instruct the jury with regard to the limited justifications for use of deadly force established by the Supreme Court in *Tennessee v. Garner*, 471 U.S. 1, 3, 11 (1985), and adopted by our court in *O'Bert ex rel. O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003); (2) by declining to submit plaintiff's negligence claims to the jury; and (3) by excluding from the jury's consideration the fact that Brown and others entered Rasanen's residence a few minutes sooner than the search warrant allowed (a *per se* constitutional violation, plaintiff contends). Additionally, appellant contends that the jury's verdict ran against the weight of the evidence.

## DISCUSSION

### I.

Appellant's contentions with regard to his negligence claim, the timing of the search, and the weight of the evidence are unavailing.

With respect to the negligence claim, we find nothing in the record that contravenes the district court's conclusion that there was no evidence either that the planning of the search contributed to Rasanen's death, or that Brown shot Rasanen unintentionally. Appellant asserts that the district court was wrong to rely on Brown's testimony that the shooting was intentional. But appellant failed to produce any evidence to the contrary, and we see no reason, therefore, to revisit the district court's dismissal of the negligence claim.

With respect to the timing of the search, we agree with the district court that the matter of premature entry is immaterial to the question of excessive force. Whether Brown and his fellows entered Rasanen's home sooner than the warrant allowed has no bearing on whether Brown acted unreasonably when he shot Rasanen.

Finally, with regard to the sufficiency of the evidence, a district court's denial of a motion for new trial on weight-of-the-evidence grounds is not reviewable on appeal. *Espinal v. Goord*, 558 F.3d 119, 131 (2d Cir. 2009); *Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp.*, 73 F.3d 1178, 1199 (2d Cir. 1995), *modified on other grounds*, 85 F.3d 49 (2d Cir. 1996).

Appellant's only potentially viable claim on appeal, then, is his claim that the jury instructions were erroneous. To this claim we now turn.

7

## II.

A. *The Jury Instructions*

The district court instructed the jury with regard to excessive deadly force as follows:[1]

> With respect to this claim of *deadly* excessive force, you are instructed that every person has the right not to be subjected to unreasonable or excessive *deadly* force in the course of a search by a law enforcement officer, even though such a search is otherwise made in accordance with the law.
>
> In other words, even if there was a lawful search, the officer has no right to use . . . excessive *deadly* force. Whether or not the force used in conducting the search was unnecessary, unreasonable and violent is an issue to be determined by you in light of all the surrounding circumstances. On the basis of that degree of force, a reasonable and prudent police officer would have applied in effecting the search under the circumstances disclosed in this case.
>
> Here, where the parties' factual contentions are disputed, you must consider the question of what events actually occurred. You must determine whether the plaintiff proved that on May 17, 2002, the decedent, an

---

[1] Amendments the court made in response to the jury's questions about "the meaning of excessive deadly force" are italicized.

unarmed man, was shot and killed unnecessarily by defendant, Daniel Brown, or whether the shooting occurred during the course of his attacking the police officer and trying to turn his gun against him, as the defendant contends.

You must determine what circumstances actually occurred that early morning in the basement bedroom where the incident occurred. The question before you is whether the actions of the defendant [Trooper] Daniel Brown, on May 17, 2002, was [sic] objectively reasonable.

*The plaintiff said the actions were objectively unreasonable and has the burden of proof as to that.*

*What does that mean? It means* what a reasonably prudent police officer would have done under similar circumstances in light of the facts and the situation confronting him on that occasion, without regard to his underlying intent or motivation. That means that evil intentions will not be excessive force, *deadly excessive force*, if the force was in fact reasonable.

On the other hand, an officer's good intentions will not make *deadly* excessive force constitutional.

The reasonableness of a particular use of force must be—*and deadly force*—judged from the perspective of a reasonable police officer on the scene rather than the 20/20 vision of hindsight.

In answering these questions, namely, whether the deadly force used by defendant, Daniel Brown, was reasonable, you should consider the facts and circumstances as you find them to be, including how this confrontation actually occurred and whether the decedent was resisting and was threatening to reach the gun of the defendant, Daniel Brown.

In the course of his duty, a police officer, in making a search, as in this case, may use only reasonable force, not excessive force.

The concept of reasonableness in this regard makes allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are sometimes tense, uncertain, dangerous and rapidly evolving about the amount of force that is necessary in a particular situation.

*That's the best I can do as far as explaining what deadly force [means]. . . .*

Appellant argues that the district court erred by failing to charge the jury in accordance with the requirements established by the Supreme Court in *Garner*, 471 U.S. at 3, 11, and adopted by our court in *O'Bert*, 331 F.3d at 36 ("It is not objectively reasonable for an officer to use deadly force . . . unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.").

Appellee contends that there was no error in the instructions because, under the Supreme Court's decisions in *Graham v. Connor*, 490 U.S. 386 (1989), and *Scott v. Harris*,

550 U.S. 372 (2007), as well as our decision in *Terranova v. New York*, 676 F.3d 305, *cert. denied*, 133 S. Ct. 414 (2012), there is no requirement that a special instruction regarding the use of deadly force be given. Alternatively, appellee argues that any error in the instruction was harmless.

B. *Preservation*

In general, we review challenges to jury instructions in civil cases *de novo*, "and will grant a new trial if we find an error that is not harmless." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 758 (2d Cir. 2004). If, however, the challenging party failed to object to the charge at trial, we review for plain error, that is "if the error affects substantial rights." Fed. R. Civ. P. 51(d)(2).[2]

Appellee avers that appellant did not preserve his objection below; appellant rejoins that he did. In support, appellant points to two passages in the transcript of the charge conference. The first dealt directly with the excessive force charge:

---

[2] Prior to 2003, we reviewed unpreserved objections to jury instructions in civil cases for "fundamental error," which we said was "more egregious than the 'plain' error that can excuse a procedural default in a criminal trial." *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62 (2d Cir. 2002). Consistent with a 2003 amendment to Federal Rule of Civil Procedure 51(d), we have since employed a "plain error" standard, *see Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 152 (2d Cir. 2010); *Macquesten Gen. Contracting, Inc. v. HCE, Inc.*, 128 F. App'x 782, 785 (2d Cir. 2005) ("The plain error standard replaces the more stringent 'fundamental error' standard that was employed in this Circuit prior to the 2003 amendment. . . ."), though invocations of the earlier "fundamental error" standard have persisted. *See S.E.C. v. DiBella*, 587 F.3d 553, 569 (2d Cir. 2009). In accordance with the language of the Federal Rules, we use "plain error" in what follows, though the particular term used does not affect this case.

MS. SWEENEY (Assistant to Plaintiff's Counsel): Can you explain when deadly force is justified?

THE COURT: No.

MS. SWEENEY: If there is a threat of serious injury or—

THE COURT: No, I didn't explain when deadly force is necessary. I don't know when it is necessary. If I had to do that, I would say going for a police officer's gun may very well be a situation where deadly force is necessary. So I wouldn't get into that.

The second statement came in the context of a dispute over the burden of proof:

MR. KUTNER (Plaintiff's Counsel): They [the defendants] must prove justification through deadly force under New York law, under the U.S. Supreme Court standards, that deadly physical force can only be applied in response or in defense of deadly physical force against the shooter, Trooper Brown, or others in the immediate area.

So they would have the basis to prove justification as a defense. It's not part of ours.

Prima facie, we make out a case with a man in his pajamas being shot by the police officer. It is their burden to—in thinking about it—it's actually Ms. Sweeney's idea, and I compliment her for raising it. They have turned

the burden upside down.  It's their defense to prove this conduct was objectively wrong.  It's not ours to prove the opposite.

THE COURT: Where did you get that from?  What case says that?

MR. KUTNER: I'll look it up overnight.  But they didn't raise it to say it's the other way.

Neither of these colloquies sufficed to preserve plaintiff's objection.  "A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1).  Plaintiff did not do this.  Plaintiff's counsel never made clear that he objected to the absence of a *Garner/O'Bert* instruction, never so much as cited either case, and never explained why such an instruction was required.  Indeed, plaintiff's counsel elsewhere expressed satisfaction with the excessive force instruction actually given.[3]

Later, when the district court proposed to respond to the jury's request for a definition of excessive deadly force by adding the word "deadly" to each instance of the phrase "excessive force" in the original instruction, plaintiff's counsel accepted the amended charge.[4]  The law of this Circuit requires parties "to make a precise objection to the supplemental instruction," *U.S. Football League v. Nat'l Football League*, 842 F.2d 1335,

---

[3] Plaintiff's counsel explained that he "thought the Court's charge was evenly balanced in instructing [the jury] as to the nature or the definition of excessive force."  "I think the charge as read is sufficient," he added.

[4] THE COURT: I'm going to repeat my charge . . . and I would say deadly excessive force.  Just add the word "deadly."  Any objection to that?
MR. KUTNER: No, your Honor.

1367 (2d Cir. 1988), as well as to the original instruction. Plaintiff in this case did neither, and thereby failed to preserve his objection. This being so, we review the instruction given by the district court for plain error.

C. *Plain Error Review*

We have long noted that the plain error exception to Rule 51's objection requirement "should only be invoked with extreme caution in the civil context." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir. 1996). "To constitute plain error, a court's action must contravene an established rule of law," *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d Cir.2001), and "go[] to the very essence of the case." *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994). For reasons that follow, we conclude that the district court committed plain error by failing, in the circumstances of this case, to instruct the jury concerning the justifications for the use of deadly force defined in *Garner* and *O'Bert*.

Appellee argues that the district court was not required to instruct the jury with regard to the *Garner/O'Bert* factors, and that therefore the instruction contained no error at all, let alone plain error. We disagree. In a case involving use of force highly likely to have deadly effects, an instruction regarding justifications for the use of deadly force is required. The district court erred by failing to give one.

In *Garner*, the Supreme Court explained that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to

14

others, it is not constitutionally unreasonable to prevent escape by using deadly force." 471 U.S. at 11. Absent such a perceived threat, the use of deadly force is constitutionally unreasonable. *Id.* We embraced this standard in *O'Bert*, a decision in which we held that "[i]t is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 331 F.3d at 36. Like the case before us, *Garner* and *O'Bert* both involved unarmed suspects who were shot to death by law enforcement officers. These two cases clearly established that (a) absent the recognized justifications, such shootings constitute excessive force, and (b) juries confronted with similar fact patterns must be instructed accordingly.

More recently, the Supreme Court declined to apply the *Garner* analysis in a case in which the "deadly force" used by law enforcement officers involved a car chase rather than a gun shot. *Scott*, 550 U.S. at 381-82. The Court observed that "*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.' *Garner* was simply an application of the Fourth Amendment's 'reasonableness' test." *Id.* at 382.

Although the Supreme Court's decision in *Scott* clarified that a special instruction based on *Garner* is not necessary (or even appropriate) in *all* deadly-force contexts, we have since made clear that this limitation does not apply in the original *Garner* context: the fatal shooting of an unarmed suspect. In *Terranova v. New York*, another case involving a high-speed car chase, we, of course, followed *Scott* in rejecting the appellants' contention that

15

the district court, by failing to instruct the jury on the basis of the *Garner/O'Bert* factors, had left jurors inadequately informed about the law.[5] We noted that "absent evidence of the use of force highly likely to have deadly effects, as in *Garner*, a jury instruction regarding justifications for the use of deadly force is inappropriate, and the usual instructions regarding the use of excessive force are adequate." 676 F.3d at 309.

But as the same statement made clear, this limitation does not apply to cases in which, "as in *Garner*," there *is* "evidence of the use of force highly likely to have deadly effects." *Id.* In other words, *Terranova*'s holding that a *Garner/O'Bert* charge was not needed in *that* case had a strong negative pregnant: in situations (such as those present in *Garner*, *O'Bert*, and the case before us) where there is official use of force highly likely to have deadly effects, a jury instruction regarding justifications for the use of deadly force is *required*, and the usual (less specific) instructions regarding the use of excessive force are *not* adequate. In such circumstances, the jury must be instructed, consistent with *Garner* and *O'Bert*, that the use of force highly likely to have deadly effects is unreasonable unless the officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or to others.

In the case before us, the officer intentionally fired at the chest of an unarmed, half-clothed man from point-blank range. Certainly this was a "use of force highly likely" to result in the suspect's death. This being so, the district court was required to instruct the

---

[5] "The present matter is easily distinguishable from *Garner* given the type of force used—a traffic stop as opposed to firing a gun aimed at a person." *Terranova v. New York*, 676 F.3d at 309.

16

jury with regard to the justifications for the use of deadly force articulated in *O'Bert* and *Garner*. By failing to do so, the court committed error.

This error "contravene[d] an established rule of law," *Lavin-McEleney*, 239 F.3d at 483, and was sufficiently serious as to undermine "the very integrity of the trial." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 343 (2d Cir. 2004). The entire trial turned on whether Brown's shooting of Rasanen was reasonable. That question was governed by clear law. The district court was required to instruct the jury on the basis of that law, even if the jury had not specifically asked for guidance on the matter. That the jury did ask for such guidance—and did not receive it—underscores the fact that the district court's failure left the jury confused about the central issue in the case.

An error that "deprive[s] the jury of adequate legal guidance to reach a rational decision" on a case's fundamental issue constitutes plain error. *Jarvis*, 283 F.3d at 62 (internal quotation marks omitted). The district court committed such an error here. We conclude that the court's failure to instruct the jury on the basis of clearly established and crucially relevant law fatally subverted the trial's integrity.[6]

This would not be so if, as appellee contends, other facts rendered harmless the district court's failure to give a required instruction. Appellee asserts that the court's actual instruction—together with the copy of the New York State Police administrative manual (which contained provisions relating to the *Garner/O'Bert* standard) that was given to the

---

[6] The fact that *Terranova*'s reaffirmation of the *Garner/O'Bert* requirement came after this case, while it explains the district court's failure to give the charge, does not alter the fact that this failure constitutes plain error. *See infra*.

jury—amounted to the functional equivalent of the instruction that *should* have been given. We cannot agree.

The district court directed the jury: "You must determine whether the plaintiff proved that . . . the decedent, an unarmed man, was shot and killed unnecessarily by defendant, Daniel Brown, or whether the shooting occurred during the course of his attacking the police officer and trying to turn his gun against him, as the defendant contends." Appellee suggests that the "whether/or" language of this sentence operates as an exclusive disjunction tantamount to a *Garner/O'Bert* charge. To comply with the charge, on this reading, the jury had to find either (a) that the killing of John Rasanen was unnecessary—*i.e.* that it constituted excessive force—or (b) that Rasanen was killed while attacking Brown and trying to turn the officer's gun against him—*i.e.* that Brown had probable cause to believe that Rasanen posed a serious threat of death or physical injury to Brown or his companions. Appellee argues, then, that this portion of the charge tailored the *Garner/O'Bert* standard to the facts of this case. Consistent with this section of the instruction, appellee maintains, the jury could find for the defendant only if it found that Brown shot Rasanen in the reasonable belief that Rasanen posed a serious threat of death or physical injury to Brown or others. Appellee suggests that this instruction enforced the substance, even if it did not employ the language, of the *Garner/O'Bert* requirements.

The problem with this reading is that it isolates a portion of the charge from the instruction as a whole.

Appellee's proposed reading assumes that a finding by the jury that Rasanen "was killed unnecessarily" must translate automatically into a finding that Brown employed excessive force. Whatever the abstract merits of such an inference, it does not follow when one considers the charge as a whole. Other statements in the jury instruction dilute what appellee would have us read as a strong disjunctive charge.

Elsewhere in the charge, for instance, the court instructed the jury to "consider the facts and circumstances as you find them to be, *including* how this confrontation actually occurred and whether the decedent was resisting and was threatening to reach the gun of the defendant, Daniel Brown." (emphasis added). This language implies that whether Rasanen tried to turn Brown's gun against him was one factor to be considered among many, rather than the decisive factor on which the entire case turned. At the outset of the charge, the court directed the jury to consider "that degree of force a reasonable and prudent police officer would have applied in effecting the search under the circumstances." The instruction later stressed that "[t]he reasonableness of a particular use of [deadly] force . . . must be judged from the perspective of a reasonable police officer on the scene rather than the 20/20 vision of hindsight." Moreover, the court added, "[t]he concept of reasonableness in this regard makes allowance for the fact that police officers are often forced to make split-second judgments in circumstances that are sometimes tense, uncertain, dangerous and rapidly evolving about the amount of force that is necessary in a particular situation."

In light of these later statements, the charge as a whole gave the jury not two options, but three. Consistent with the entire charge, the jury could find (a) that the shooting was *unnecessary*, and therefore that it constituted excessive force; (b) that the shooting was *necessary*—*i.e.* that it took place in the context of Rasanen's trying to turn Brown's gun against him; or (c) that the shooting *seemed necessary*—*i.e.* that Rasanen was *not* trying to turn Brown's gun against him, but that Trooper Brown, making split-second decisions without the benefit of hindsight, nonetheless acted reasonably under the circumstances. The charge's fatal defect is that the jury did not know, because it was not told, that it could properly place the shooting in this last category *only* if it found that the *Garner/O'Bert* requirements (dealing with fear of serious physical harm) were also met.

Had the jury been instructed, "You *must* find for the plaintiff *unless* you find that Rasanen was shot after attacking Trooper Brown and trying to turn Brown's gun against him," the charge would have more closely approximated the *Garner/O'Bert* standard.[7] Indeed, such a charge might, in some ways, have been even more advantageous to plaintiff than a clear statement of the *Garner/O'Bert* standard. But this hypothetical charge is not the charge that was given. Even in isolation, the disjunctive instruction was not nearly so

---

[7] We note that it still would not have been a fully proper substitute for a *Garner/O'Bert* charge. Even if the jury found that Rasanen made a move for Brown's gun, it could still find, in principle, that the shooting was excessive—*i.e.* that Brown did not shoot Rasanen in the reasonable fear of serious physical injury to himself or others. One can imagine a scenario in which the suspect is so small and weak, and the officer so large and powerful, that even the suspect's attempt to seize the officer's gun would not justify the officer in slaying the suspect. This might be extremely unlikely, but it is nonetheless a factual question that must be submitted to the jury, not a question of law that can be presumed in the charge.

strong. Read in the context of the charge as a whole, that instruction was impermissibly diluted.

This is so even though the district court informed the jury that certain provisions of the New York State Police Administrative Manual—provisions that partly echo the language of *Garner* and *O'Bert*—apply to this case. During its deliberations, the jury told the court that it was considering a provision of the manual from a section entitled, "Use of Deadly Physical Force," which reads:

> A Member may use deadly physical force against another person when they reasonably believe it to be necessary to defend the Member or another person from the use or imminent use of deadly physical force. N.Y.S.P. Admin. Manual 16B1(A).

The jury asked whether certain other provisions applied to this case. The court replied that some did apply and some did not. The provisions the court identified as applicable read as follows:

> Where feasible and consistent with personal safety, give *some warning other than a warning shot BEFORE using deadly force against another person.* N.Y.S.P. Admin. Manual 16B1(E).

Where feasible and consistent with personal safety use *every other reasonable alternative means BEFORE using deadly physical force against another person*. N.Y.S.P. Admin. Manual 16B1(F).

In considering the use of firearms, *understand* that YOU ALONE ARE RESPONSIBLE FOR YOUR ACTS, and that you may be required to justify your acts in court. N.Y.S.P. Admin. Manual 16B1(H).

None of these provisions, nor all of them together, provides an adequate substitute for an explicit *Garner/O'Bert* charge.

First, these provisions do not in fact capture the substance of the *Garner/O'Bert* requirements. Subdivision 16B1(A) does contain language similar to that used in *Garner* and *O'Bert*. But unlike the rule announced in those two cases, the manual provision is not framed in exclusive and restrictive terms. The manual provides that officers "may use deadly physical force . . . when they reasonably believe it to be necessary to defend [themselves] or another person from the imminent use of deadly physical force." It does not say that officers may use deadly physical force *only* under such circumstances.

Second, even if the manual provisions had reproduced the *Garner/O'Bert* rule verbatim, the court's statement that those provisions merely "apply" to the case at hand does not substitute for an instruction that the *Garner/O'Bert* rule is binding as a matter of constitutional law. An administrative manual provision can "apply" to a case in many different ways. In the case before us a reasonable juror might well find, on the basis of the

22

manual provisions just quoted, that Brown's conduct departed from police protocol. But that juror need not find, as a necessary corollary, that Brown's conduct violated the plaintiff's constitutional rights.

III.

We conclude that, in the circumstances of this case—the close-range shooting of a suspect by a law enforcement officer—the district court was required to instruct the jury that it must find that this use of force was excessive "unless [the jury found that] the officer ha[d] probable cause to believe that the suspect pose[d] a significant threat of death or serious physical injury to the officer or others." *O'Bert*, 331 F.3d at 36. The district court did not give this charge, and—though it is a close question—we also conclude that it did not give the functional equivalent of this charge.[8] Because the *Garner/O'Bert* standard governed the fundamental issue in the case—really the only issue in the case—the district court's failure to instruct the jury on the basis of that standard constituted plain error.

The district court's reluctance to give a special charge on the use of deadly force is perfectly understandable. The Supreme Court's holding in *Scott* that such a charge is inappropriate in some contexts might naturally have made district courts reluctant to give

---

[8] The district court apparently did not intend to give the functional equivalent of a *Garner/O'Bert* charge. When plaintiff's counsel's associate asked the court to "explain when deadly force is justified," the court answered, "I don't know when it is necessary. If I had to do that, I would say going for a police officer's gun may very well be a situation where deadly force is necessary. So I wouldn't get into that." It seems, then, that the Court did not intend to instruct the jury that it must find for plaintiff unless it found that Rasanen tried to turn Brown's gun against him. This would not matter, of course, if the charge the Court *did* give amounted to the same thing. But it is consistent with our view that the charge was not the equivalent of what is required.

23

such a charge even in other contexts.  But, in our Circuit, whatever doubts *Scott* might have raised about the necessity and appropriateness of a *Garner/O'Bert* charge in the context of a deadly shooting were put to rest by *Terranova*.

In the case before us, of course, the district court instructed the jury before *Terranova* was decided and amid the lingering uncertainty created by *Scott*.  In the meantime, however, that uncertainty has been dispersed.  And we must review jury instructions in light of the law as it stands at the time of appeal. *United States v. Nouri*, No. 09-3627-cr(L), 2013 WL 780918, at *6 (2d Cir. Mar. 4, 2013); *United States v. Polouizzi*, 564 F.3d 142, 156 (2d Cir. 2009).[9]  Under this current law, we find that the instruction given to the jury in this case was plain error.

**CONCLUSION**

For the foregoing reasons we VACATE the decision of the district court and REMAND for a new trial.

---

[9] We have applied this rule in the civil, as well as the criminal, context. *See Tirreno v. Mott*, 375 F. App'x 140, 142 (2d Cir. 2010) (summary order).

12-680-cv
Rasanen ex rel. Estate of Rasanen v. Brown

REENA RAGGI, *Circuit Judge*, *dissenting*:

A panel majority concludes that there must be a new trial of plaintiff's Fourth Amendment excessive force claim against New York State Trooper Daniel Brown because the district court failed to give the following instruction: "[T]he use of force highly likely to have deadly effects is unreasonable unless the officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or to others." Ante at **[16]**. The majority acknowledges that plaintiff never requested such a charge at the initial charge conference or prior to a supplemental charge pertaining specifically to deadly force. Nevertheless, it concludes that such an instruction is so clearly mandated by Supreme Court and circuit precedent that its omission here was plain error. See Fed. R. Civ. P. 51(d)(2). I disagree and, therefore, respectfully dissent.[1]

1.    Waiver

To begin, it is by no means clear to me that we should review the purported charging omission even for plain error. Before the district court, plaintiff did not simply fail to object to the jury charge on the ground identified by the panel majority. Rather, it endorsed the district court's excessive force charge as "evenly balanced in instructing as to the nature of excessive force" and "sufficient" for that purpose. Trial Tr. 2313. As we have observed,

_____

[1] I do, however, join the majority in rejecting plaintiff's contentions with regard to its negligence claim, the timing of the search leading to the fatal shooting, and the weight of the evidence. See ante at **[6-7]**.

"[s]uch endorsement" of a charge—even in a criminal case—"might well be deemed a true waiver" of any subsequent challenge, "negating even plain error review."  United States v. Hertular, 562 F.3d 433, 444 (2d Cir. 2009) (collecting cases).

2.	Plain Error

Even absent true waiver, however, I do not think this case manifests plain error.  The legal standard for plain error is well known:

> [A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

United States v. Marcus, 130 S. Ct. 2159, 2164 (2010) (alterations and internal quotation marks omitted); see Fed. R. Civ. P. 51 Advisory Committee Note to 2003 Amendments (noting that plain error language in Civil Rule 51(d)(2) is "borrowed from Criminal Rule 52" in order to capture decisions at law recognizing that unpreserved charging errors warrant appellate review only in "exceptional circumstances").  Plaintiff here fails to satisfy these requirements.

2

a.    No Clear or Obvious Error

(1)    *Garner* and *O'Bert* Do Not Clearly Establish a Charging Requirement for Deadly Force Cases

Plaintiff cannot satisfy the first two requirements of plain error because no controlling precedent clearly mandates that a district court charge a jury that a precondition to the use of "force highly likely to have deadly effects is . . . probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or to others." Ante at **[16]**; see Henderson v. United States, 133 S. Ct. 1121, 1127 (2013) (recognizing plain error to require "authoritative legal decision" on subject); United States v. Youngs, 687 F.3d 56, 59 (2d Cir. 2012) ("To be plain, an error of the district court must be obviously wrong in light of existing law" (internal quotation marks omitted)).[2]

In concluding otherwise, the panel majority derives such a charging requirement from the Supreme Court's statement in Tennessee v. Garner, 471 U.S. 1 (1985), that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force," id. at 11.  See ante at **[14-15]**.  Earlier in Garner, the Supreme Court had cast this conclusion more restrictively, stating that, in attempting to apprehend an "apparently

---

[2] Our concern on plain error review is not whether a district court might ever reference such probable cause—or the facts demonstrating such probable cause—in charging a jury considering an excessive force claim.  Rather, we properly consider only whether such a charge is mandated by clearly established law.

3

unarmed suspected felon," deadly force "may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 471 U.S. at 3. We echoed the latter formulation when referencing Garner in O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29 (2d Cir. 2003). There, we stated: "It is not objectively reasonable for an officer to use deadly force to apprehend a suspect unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Id. at 36.

To the extent such language might be construed to establish a "precondition" for the use of deadly force, the Supreme Court has since ruled to the contrary in Scott v. Harris, 550 U.S. 372 (2007). "Garner did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'" Id. at 382. Scott counseled that "[w]hether or not [an officer's] actions constitute[] application of 'deadly force,' all that matters is whether [his] actions were reasonable." Id. (emphasis added) (disclaiming existence of "easy-to-apply legal test in the Fourth Amendment context," and concluding that, in any given case, court must "slosh . . . through the factbound morass of 'reasonableness'"). Following Scott, two of our sister circuits have rejected challenges to jury charges in deadly force cases that relied only on "the general rubric of reasonableness." Noel v. Artson, 641 F.3d 580, 587 (4th Cir. 2011); see Acosta v. Hill, 504 F.3d 1323, 1324 (9th Cir. 2007) (concluding that requirement of "deadly force instruction" in addition to

4

"excessive force instruction based on the Fourth Amendment's reasonableness standard" was "explicitly contradict[ed]" by and "clearly irreconcilable with" Scott (internal quotation marks omitted)). In reaching a different conclusion here, the majority creates an unwarranted circuit split.

Further undermining the suggestion that Garner and O'Bert clearly established a charging requirement for excessive force cases is the fact that neither case references probable cause in discussing how juries should be instructed to consider Fourth Amendment challenges to the use of deadly force. Indeed, Garner arose in the context of a bench trial. See 471 U.S. at 5. At issue was the constitutionality of a policy that allowed police to use deadly force to prevent the escape of any felony suspect. See id. The Supreme Court ruled that policy unconstitutional on its face, and because the only proffered justification for the particular application of deadly force was to prevent escape, the Court's decision of law left no question of fact to be tried. See id. at 21. At issue in O'Bert was the denial of summary judgment to a defendant who invoked qualified immunity to prevent his case from going before a jury. In affirming the denial, this court did not suggest that the officer's version of events, in which he professed himself to be confronting resistance from an armed suspect, raised any probable cause issue for trial. Rather, trial was necessary because the plaintiff disputed the officer's account, and "[o]n plaintiff's version of the facts, in which [the officer] shot to kill O'Bert while knowing that O'Bert was unarmed, it is obvious that no reasonable

5

officer would have believed that the use of deadly force was necessary." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d at 40.

In context, then, the references to probable cause in Garner and O'Bert seem directed more at courts than at juries, providing guidance as to which excessive force cases can be decided as a matter of law and which require plenary trial. In other circumstances where the Supreme Court has identified burdens of production and persuasion that inform a district court's identification of cases that should proceed to trial, we have observed that a jury "does not need to be lectured on the concepts that guide a judge in determining whether a case should go to the jury." Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 118 (2d Cir. 2000) (concluding that juries considering employment discrimination claims should not be charged by reference to McDonnell Douglas framework). The same reasoning applied here further prevents us from identifying any clearly established and, therefore, plain charging error in this case.

Indeed, that conclusion is only reinforced by precedent generally cautioning against the practice of using decisional language to charge juries in the absence of clear indications that a reviewing court so intends. See Renz v. Grey Adver., Inc., 135 F.3d 217, 223 (2d Cir. 1997) (observing that juries can be misled when trial judges import into jury charges language employed by appellate courts to guide judges); accord Gordon v. N.Y.C. Bd. of Educ., 232 F.3d at 118; see also 9C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2556 (3d ed. 2008) (stating that it "is not helpful" to juries for trial

courts "to take quotations from the opinions of appellate courts, never intended to be used as instructions to juries, and [to] make these a part of the charge"). This caution is particularly warranted with respect to a concept such as probable cause for at least two reasons. First, a jury "acts only as a fact-finder," Gordon v. N.Y.C. Bd. of Educ., 232 F.3d at 118, and once any disputed facts are resolved, probable cause is a question of law, see Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007). Thus, even where a question of probable cause is relevant to a jury's resolution of a civil claim—and not simply a gateway for identifying cases that warrant trial—a district court may well decide not to present it to the jury but to ask only that the jury decide the existence of those facts that would establish probable cause. See Walczyk v. Rio, 496 F.3d at 157 (collecting cases); cf. Lore v. City of Syracuse, 670 F.3d 127, 162 (2d Cir. 2012) (identifying error in district court's "having the jury decide the ultimate legal question" of qualified immunity "[i]n light of its factual findings"). Second, the charge that the majority purports to derive from Garner and O'Bert—i.e., that deadly force to effectuate an arrest is impermissible "unless the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others"—risks confusing juries as to the burden of proof, which in excessive force cases rests only with the plaintiff. See Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005); Davis v. Rodriguez, 364 F.3d 424, 431 (2d Cir. 2004); see also Miller v. Taylor, 877 F.2d 469, 470 (6th Cir. 1989) (rejecting claim that burden of proof

7

shifts to defendant in deadly force cases); Edwards v. City of Philadelphia, 860 F.2d 568, 572 (3d Cir. 1988) (same).[3]

In this case, as in O'Bert, there was no question that Rasanen's excessive force claim had to proceed to the jury. Brown claimed that he shot Rasanen while struggling to regain control of his own gun after Rasanen had lunged at the officer and Brown felt his gun pointed against him. Such a scenario plainly demonstrated "probable cause to believe that the suspect pose[d] a threat of serious physical harm." Tennessee v. Garner, 471 U.S. at 11; see generally Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) (describing probable cause as "practical," "common-sensical," "all-things considered" standard for assessing probabilities in particular factual context); Illinois v. Gates, 462 U.S. 213, 231–32, 238 (1983) (recognizing probable cause as "fluid" standard that does not demand "hard certainties" but only the sort of "fair probability" on which "reasonable and prudent men, not legal technicians, act"). Plaintiff never contended otherwise. Instead, it maintained that forensic evidence and inconsistencies in witnesses' accounts showed that Brown had concocted the gun-struggle story and, in fact, had unnecessarily shot and killed an unarmed man. If the jury were to accept plaintiff's version, then "no reasonable officer would have believed that the

---

[3] On this appeal, plaintiff does not challenge the district court's charging it with the burden of proof on excessive force. See Appellant's Br. 2 (arguing that trial evidence "far surpassed [plaintiff]'s burden of proof").

8

use of deadly force was necessary." O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d at 441.

The district court properly focused the jury on this determinative factual dispute. First, the court correctly charged the general Fourth Amendment principle that "[w]hether or not the force used in conducting the search was unnecessary, unreasonable and violent is an issue to be determined by you in light of all the surrounding circumstances, on the basis of that degree of force a reasonable and prudent police officer would have applied in effecting the search under the circumstances disclosed in this case." Trial Tr. 2507, 2566. But then the trial court told the jury that it "must determine" what "actually occurred," specifically, "whether the plaintiff proved that on May 17, 2002, the decedent, an unarmed man, was shot and killed unnecessarily by defendant Daniel Brown or whether the shooting occurred during the course of his attacking the police officer and trying to turn his gun against him as the defendant contends." Id. at 2508, 2567–68. This disjunctive statement of the parties' positions was sufficient to ensure that, if the jury returned a verdict for Brown, it did so consistent with the Fourth Amendment standard of reasonableness discussed in Garner and Scott. Indeed, as previously observed, plaintiff's counsel professed this charge to be "evenly balanced" and "sufficient" to instruct the jury on the "nature" and "definition of excessive force under Section 1983 and the Fourth Amendment." Id. at 2313.

In nevertheless insisting that Garner and O'Bert support a finding of plain error here, the majority attempts to cabin Scott to its facts. It submits that even if Scott, a case where

9

deadly force was administered by a motor vehicle, does not require a "probable cause" instruction in <u>all</u> deadly force cases, such an instruction is still required when the agent of deadly force is a firearm. <u>See</u> <u>ante</u> at **[15-16]**. The majority cannot, however, claim that <u>Scott</u> itself makes such a conclusion <u>plain</u>. Indeed, <u>Scott</u>'s emphasis on the "particular situation" in which "a particular type" of deadly force was used in <u>Garner</u> precludes lumping all shooting cases together. The shooting of a fleeing suspect in the back as he tried to run away from the police, as in <u>Garner</u>, is hardly the same "particular situation" as the shooting of a suspect who lunges toward the officer and turns his gun against him. This distinction signals caution in the application of "rigid preconditions" for determining reasonableness in deadly force cases generally, even those involving shootings. <u>Scott v. Harris</u>, 550 U.S. at 382.

Indeed, far from distinguishing among deadly force cases, <u>Scott</u> instructs that a single legal standard applies to all excessive force cases, deadly or otherwise: "Whether or not [an officer's] actions constitute[] application of 'deadly force,' all that matters is whether [his] actions were reasonable." <u>Id.</u> This is a "factbound" determination that requires "'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" <u>Id.</u> (quoting <u>United States v. Place</u>, 462 U.S. 696, 703 (1983)).

        (2)     <u>*Terranova* Does Not Clearly Establish a Charging Requirement for Deadly Force Shooting Cases</u>

The majority maintains that, even if <u>Scott</u> does not plainly establish the need to charge a probable cause precondition for the use of deadly force in police shooting cases, our own precedent, specifically <u>Terranova v. New York</u>, 676 F.3d 305 (2d Cir. 2012), does. <u>See ante</u> at **[24]** (stating that "whatever doubts <u>Scott</u> might have raised about the necessity and appropriateness of a <u>Garner</u>/<u>O'Bert</u> charge in the context of a deadly shooting were put to rest by <u>Terranova</u>"). It is no mean feat for the majority to reach such a conclusion from <u>Terranova</u>, a case that <u>rejected</u> an argument that a district court had erred when, after <u>Scott</u>, it refused to supplement its jury charge on the objective reasonableness standard of the Fourth Amendment with a requested instruction as to <u>Garner</u>'s preconditions for the use of deadly force. <u>See Terranova v. New York</u>, 676 F.3d at 308–09. The majority nevertheless derives a requirement to charge a probable cause precondition in deadly force shooting cases from the fact that <u>Terranova</u>, like <u>Scott</u>, involved vehicles, and that this court therein stated: "We therefore conclude that, absent evidence of the use of force highly likely to have deadly effects, as in <u>Garner</u>, a jury instruction regarding justifications for the use of deadly force is inappropriate, and the usual instructions regarding the use of excessive force are adequate." <u>Id.</u> at 309. The majority explains that the phrase "absent evidence of the use of force highly likely to have deadly effects" is "a strong negative pregnant," <u>ante</u> at **[16]**—apparently so strong as to establish as the controlling law in this circuit that

> in situations (such as those present in <u>Garner</u>, <u>O'Bert</u>, and the case before us) where there is official use of force highly likely to have deadly effects, a jury instruction regarding justifications for the use of deadly force is <u>required</u>, and

11

the usual (less specific) instructions regarding the use of excessive force are not adequate. In such circumstances, the jury must be instructed consistent with Garner and O'Bert, that the use of force highly likely to have deadly effects is unreasonable unless the officer had probable cause to believe that the suspect posed a significant threat of death or serious physical injury to the officer or to others.

Id. (emphasis in original). The conclusion does not bear close scrutiny.

First, as courts have long recognized, "negative pregnants" are hardly reliable indicators of either law or fact. See Brooks v. Kyler, 204 F.3d 102, 108 (3d Cir. 2000) ("[D]rawing instruction from Supreme Court passages through the use of the negative pregnant is risky and unsatisfactory."); United States v. Pilot Petroleum Assocs., Inc., 122 F.R.D. 422, 423 n.1 (E.D.N.Y. 1988) (McLaughlin, J.) (observing that "vice . . . known as the negative pregnant" has been "source of judicial irritation [since] before Columbus discovered America," and citing to authority from reign of Henry VI); see also Cool v. United States, 409 U.S. 100, 108 (1972) (Rehnquist, J., joined by Burger, C.J., and Blackmun, J., dissenting) (criticizing reversal on ground that instruction contained negative pregnant as "smack[ing] more of scholastic jurisprudence" than of "commonsense" appellate review). That alone is reason not to recognize a negative pregnant as the source of established law supporting a finding of plain error.

Second, what Terranova stated in the sentence at issue was that, in the circumstances of that case, absent "force highly likely to have deadly effects," a special instruction on justification for deadly force was "inappropriate." 676 F.3d at 309. At best, the attached

12

negative pregnant leaves open a possibility that, in other circumstances, where the use of force is highly likely to have deadly effects, such a justification instruction might be appropriate. But see Capitol Records, Inc. v. Naxos of Am., Inc., 372 F.3d 471, 480 (2d Cir. 2004) (noting "logical fallacy of assuming that the inverse of a proposition is true" (citing Raymond J. McCall, Basic Logic 125–26 (2d ed. 1952)). In any event, there is a very long distance in the law between what may be appropriate as a matter of judicial charging discretion and what is constitutionally required—a distance too long, I think, to allow for the identification of a plain charging error here.

Third, even if Terranova's negative pregnant could be stretched to the point of establishing a charging requirement for excessive force shooting cases, such a pronouncement would be dictum, as it was unnecessary to decide the case at hand. See Baraket v. Holder, 632 F.3d 56, 59 (2d Cir. 2011) (stating that what "distinguishes holding from dictum" is "whether resolution of the question is necessary for the decision of the case" (citing Seminole Tribe v. Florida, 517 U.S. 44, 67 (1996)); see also Cohens v. Virginia, 19 U.S. 264, 399–400 (1821) (Marshall, C.J.) (contrasting "question actually before the Court," which is "investigated with care, and considered in its full extent," with other cited, but "seldom completely investigated," principles). Such dictum cannot establish law and,

13

therefore, does not support a finding of plain error.  See, e.g., United States v. Whren, 111 F.3d 956, 960–61 (D.C. Cir. 1997).[4]

In sum, Garner, O'Bert, Scott, and Terranova do not make it clear and obvious that juries in all excessive force shooting cases must be charged that there is a probable cause precondition to the use of deadly force.  Thus, the district court's asserted failure to give such a charge in this case cannot be deemed plain error.

b.      Effect on Substantial Rights

The third element of plain error, an adverse effect on a party's substantial rights, generally requires a reasonable probability that the error affected the outcome of the proceeding.  See United States v. Marcus, 130 S. Ct. at 2164.  Plaintiff cannot make this showing because the excessive force claim here turned on a dispute of fact:  Brown claimed that he shot Rasanen in the course of a struggle, while plaintiff claimed that the struggle story was concocted.  Plaintiff never suggested that, even if there had been a struggle, it would have been unreasonable for Brown to have shot Rasanen.  See Trial Tr. 2470 (arguing on rebuttal summation that Brown invented "false story" about struggle because, otherwise, there would have been "no good reason" to have used deadly force).  Because a suspect's

_____

[4] Indeed, further undermining the suggestion that Terranova can be construed to "establish" a different Garner rule for shooting cases is its own reliance on a shooting case, Penley v. Eslinger, 605 F.3d 843 (11th Cir. 2010), for the conclusion that none of the Garner "'conditions are prerequisites to the lawful application of deadly force,'" Terranova v. New York, 676 F.3d at 309 (quoting Penley v. Eslinger, 605 F.3d at 850).

14

decision to run directly at an armed officer in close quarters undoubtedly demonstrates probable cause for a reasonable officer to believe that the suspect posed a significant threat of death or serious physical injury to the officer or others, plaintiff cannot show that the omission of a <u>Garner</u>-derived deadly force charge in this case had any effect on the outcome of the trial.

In concluding otherwise, the majority points to the district court's instruction telling the jury to "consider the facts and circumstances as you find them to be, including how this confrontation actually occurred and whether the decedent was resisting and was threatening to reach the gun of the defendant." <u>Id.</u> at 2509, 2567–68. The majority hypothesizes that the word "including" might have misled the jury into thinking that the existence of a struggle for the gun was simply one factor to consider in its deliberations, and not the sole justification advanced for Brown's use of deadly force. I disagree. The point of the quoted language was to instruct the jury that their ultimate determination of <u>reasonableness</u> required them to consider all facts and circumstances. <u>See</u> <u>Scott v. Harris</u>, 550 U.S. at 383 (referencing "factbound" nature of reasonableness inquiry). The district court had already made clear to the jury that, in deciding what "actually occurred," the parties were disputing two possible scenarios. Thus, the jury had to "determine whether the plaintiff proved that on May 17, 2002, the decedent, an unarmed man, was shot and killed unnecessarily by defendant Daniel Brown or whether the shooting occurred during the course of his attacking the police officer and trying to turn his gun against him, as the defendant contends." <u>Id.</u> at 2508, 2567–68.

15

When the "including" reference is placed in the context of a charge that thus ascribed a specific justification argument to Brown that satisfied Garner, see Crigger v. Fahnestock & Co., 443 F.3d 230, 235–36 (2d Cir. 2006), I think it clear that any Garner charging omission was necessarily harmless.

Nor am I persuaded to reach a different conclusion from the majority's suggestion that the challenged charge afforded the jury "not two options, but three." Ante at **[20]**. The majority highlights sections of the charge instructing that the reasonableness of the use of deadly force "must be judged from the perspective of a reasonable police officer on the scene rather than the 20/20 vision of hindsight," Trial Tr. 2508, 2551, and that reasonableness allows for the fact that officers must often make "split-second judgments in circumstances that are sometimes tense, uncertain, dangerous and rapidly evolving about the amount of force that is necessary in a particular situation," id. at 2509; see id. at 2551. The majority submits that when the disjunctive scenario instruction is viewed together with these, the jury could find

> (a) that the shooting was unnecessary, and therefore . . . excessive . . . ; (b) that the shooting was necessary—i.e. that it took place in the context of Rasanen's trying to turn Brown's gun against him; or (c) that the shooting seemed necessary—i.e. that Rasanen was not trying to turn Brown's gun against him, but that Trooper Brown, making split-second decisions without the benefit of hindsight, nonetheless acted reasonably under the circumstances.

Ante at **[20]** (emphasis in original). The majority concludes that the "fatal defect is that the jury did not know, because it was not told, that it could properly place the shooting in this

16

last category only if it found that the Garner/O'Bert requirements (dealing with fear of serious physical harm) were also met." Id. (emphasis in original). I cannot agree.

There is no plausible view of the record that would allow the jury to reach either the second or third posited conclusion without finding that Brown reasonably believed he was engaged in a struggle for control of his gun. In the second scenario, Brown's belief would have been correct; the third scenario admits the possibility of reasonable mistake. That difference is irrelevant to the probable cause requirement urged by the majority. See Texas v. Brown, 460 U.S. 730, 742 (1983) (explaining that probable cause does not demand that officer's good-faith belief "be correct or more likely true than false"); see also Penley v. Eslinger, 605 F.3d 843, 853 (11th Cir. 2010) (affirming judgment for officers on claim that they used excessive force by shooting student waving toy gun).

The majority further submits that, even if the jury found that Rasanen actually tried to gain control over Brown's gun, a jury could conclude that the shooting was excessive because "[o]ne can imagine a scenario in which the suspect is so small and weak, and the officer so large and powerful, that even the suspect's attempt to seize the officer's gun would not justify the officer in slaying the suspect." Ante at **[20 n.7]** The majority does well to characterize this scenario as "extremely unlikely." Id. A discharged bullet's homicidal potential does not, after all, depend on the physical size of the person pulling the trigger. In any event, I think that the majority here conflates the questions of probable cause and reasonableness. See generally Davis v. Little, 851 F.2d 605, 607–08 (2d Cir. 1988)

17

(distinguishing concepts). If the jury found, as its verdict suggests it did, that it was objectively reasonable for Brown to think that Rasanen had engaged him in a struggle in which the control of his firearm was at stake, then any difference in size between the two men would not be enough for plaintiff to show that a "reasonable and prudent" officer in such a struggle could not have thought that there was at least a "fair probability" that he faced a serious threat of physical harm. Illinois v. Gates, 462 U.S. at 231–32, 238. Whether other circumstances might nevertheless permit a jury to conclude that the use of deadly force was excessive even in the face of such a probable threat depends on a balancing of the competing individual and government interests that inform reasonableness. See Scott v. Harris, 550 U.S. at 383–84. That balancing is not our concern here. The evidence, viewed in the light most favorable to the jury verdict, was sufficient to support a finding of reasonableness. To the extent we consider only whether the district court's failure to supplement its reasonableness charge with a probable cause instruction affected the outcome of the case, I am satisfied by a jury verdict that necessarily found facts satisfying probable cause that there was no prejudice.[5]

---

[5] Insofar as plaintiff's counsel submitted a post-verdict affidavit recounting jurors' purported misunderstanding as to excessive force in their deliberations, plaintiff expressly disavows reliance on these alleged conversations on appeal, a course compelled by Fed. R. Evid. 606(b) (precluding inquiry into jury deliberations).

c.      Fairness, Integrity, and Public Reputation of Judicial Proceedings

Because I identify no clear or obvious error in the district court's failure to give a Garner-based deadly force instruction, and because I, in any event, identify no prejudice to plaintiff therefrom, I necessarily conclude that the fairness, integrity, or public reputation of judicial proceedings would not be called into question by allowing the challenged judgment to stand.

In sum, because plaintiff fails to satisfy any of the requirements for plain error, I respectfully dissent from the majority decision to vacate judgment and order retrial in this case.